WILLIAM L. JENKS v. REBECCA HORTON.

*Estates in land—Life-tenant—Liability for taxes—Remedy of reversioner—Appointment of receiver.*

1. The law imposes upon a life-tenant the duty of paying the taxes assessed upon the land.[1]

2. The agreement by a reversioner, in a mortgage of his reversionary interest, to pay the taxes assessed on the land, is not of itself a release of the life-tenant from the duty of making such payment.

3. A purchaser of a reversion, either by mortgage or absolute conveyance, is subrogated to all of the rights of the original reversioner as against a life-tenant.

4. Under the method of enforcing the collection of unpaid taxes upon real estate, and the system of foreclosing liens, in this State, the appointment of a receiver of the rents and profits of land, on default of a life-tenant to pay the taxes due thereon, is not the proper remedy.

Appeal from St. Clair. (Canfield, J.) Argued April 28, 1893. Decided June 1, 1893.

Bill to declare taxes paid by the owner of the reversion a lien upon the estate of a life-tenant. Defendant appeals. Decree modified and affirmed. The facts are stated in the opinion.

*P. H. Phillips,* for complainant.

*A. E. Chadwick,* for defendant:

1. In support of the contention that the appointment of a receiver was unauthorized, counsel cited How. Stat. § 7847; *Wagar v. Stone,* 36 Mich. 364; *Livingston v. Hayes,* 43 Id. 129; *Hazeltine v. Granger,* 44 Id. 505; *Reading v. Waterman,* 46 Id. 107.

GRANT, J. The agreed facts in this case are as follows:

1. Prior to May 8, 1869, the ownership of the land was

---

[1] See *Smith v. Blindbury,* 66 Mich. 319.

in Rebecca Horton, as widow of Nelson D. Horton, deceased, and Carlos D. Horton and Mary E. Beard, the children and heirs at law of Nelson D. Horton, and the property was the homestead of Nelson D. Horton.

2. May 8, 1869, the said Carlos D. Horton and Mary E. Beard gave to Rebecca Horton a life-lease of said premises.

3. By sundry and mesne conveyances the title of Carlos D. Horton was conveyed to Frances S. Farrand.

4. May 22, 1884, Frances S. Farrand conveyed the interest acquired from Carlos D. Horton to Etta M. Beard, and upon the same day the said Etta M. Beard gave to B. C. Farrand a mortgage on the entire reversion for $918.90, to secure the purchase price of the interest conveyed to her. Said mortgage contained a covenant on the part of the mortgagor to pay all taxes assessed upon said premises.

5. Said mortgage was assigned, June 16, 1884, to George S. Barrett, and by him foreclosed for the interest accrued and unpaid; the sale taking place February 27, 1886, and a sheriff's deed being made to George S. Barrett. Redemption expired.

6. May 7, 1887, the said George S. Barrett, by his attorney in fact, conveyed, by ordinary quitclaim, the said premises to B. C. Farrand and W. L. Jenks, and on the 18th day of September, 1889, the said Barrett executed in person a conveyance by quitclaim, in usual form, of the said premises to the same grantees; and the said Farrand conveyed by ordinary warranty deed, except as against existing tax claims and mortgages, his interest in the said premises to Sheldon A. Wood, on September 23, 1889; and after the filing of the original bill in this case the said Sheldon A. Wood conveyed, without covenants, his interest in the said premises to complainant.

7. September 20, 1886, the said George S. Barrett redeemed the said premises from the sale made for unpaid taxes of 1882 and 1883, paying therefor, for the taxes of 1882, the sum of $84.90, and, for the taxes of 1883, $71.14.

8. September 27, 1887, the said B. C. Farrand and W. L. Jenks redeemed for the taxes of 1884, paying therefor $62.94; September 25, 1888, the said parties redeemed for the taxes of 1885, paying therefor $68.70; September 27, 1889, the said Jenks and Wood redeemed for the taxes of 1886, paying therefor $71.56; and all the rights of said Barrett for taxes paid were transferred to said Farrand

and Jenks, and the rights of said Farrand and Jenks transferred to Jenks and Wood, and the rights of said Wood transferred to said complainant by assignment.

9. At the time of filing the original bill there were the ordinary city, State, and county taxes assessed upon said premises for the years 1887, 1888, and 1889, in all amounting to upwards of $161, unpaid.

10. Said Rebecca Horton has occupied a portion of the premises continuously since the life-lease given to her in May, 1869, and has not paid any taxes assessed thereon beginning with the year 1882.

11. From September 1, 1885, to January 20, 1890, Etta M. Beard and her family occupied the property described in the bill as a home; Mrs. Horton also living there during the same time.

The court entered a decree that the complainant had a lien upon the life-estate of the defendant for the taxes of 1882 to 1886, inclusive, which had been paid by the complainant and his assignors, and for the unpaid taxes of 1887, 1888, and 1889; that she pay the amount of such taxes within 60 days after service upon her of a certified copy of the decree, and that, in default thereof, her interest be sold by the sheriff of the county, in the manner provided for the sale of real estate on execution, for the taxes to and including the year 1886; and that, in default of the payment of the taxes for the subsequent years above named, a receiver be appointed to receive the rents and profits of the premises for the purpose of paying such taxes.

Defendant's counsel insists (1) that complainant has no lien or right of action for the taxes prior to and including 1886; and (2) that under our system of taxation complainant is not entitled to a receiver for the unpaid taxes.

1. It is conceded that the law imposes upon a life-tenant the duty to pay the taxes assessed upon the land. It is insisted, however, that the personal covenant of the reversioner in the mortgage to B. C. Farrand to pay the taxes, and the joint occupancy of the premises by the

defendant and her daughter, the reversioner, operated to relieve the defendant from the payment thereof.[1] The defendant, however, was a stranger to the agreement between the reversioner and B. C. Farrand. The fact that a reversioner mortgages his reversion, and in the mortgage agrees with the mortgagee to pay the taxes, is not of itself a release of that duty on the part of the life-tenant. Had there been a contract between the defendant and her daughter by which the daughter had agreed to pay the taxes, a different question would have been presented, which we are not now called upon to determine. A purchaser of a reversion, either by mortgage or absolute conveyance, is subrogated to all the rights of the original reversioner as against a life-tenant. The agreed facts contain nothing showing any intention or agreement to release defendant from this duty to pay the taxes. The decree, therefore, covering the taxes which the complainant and his assignors have paid, is affirmed.

2. In New York the practice of appointing receivers in similar cases prevails (*Cairns v. Chabert*, 3 Edw. Ch. 312; *Sidenberg v. Ely*, 90 N. Y. 257); but under our method of enforcing the collection of unpaid taxes upon real estate, and under our system of foreclosing liens, we do not think the appointment of receivers the proper remedy. When it is determined by adjudication that defendant is under obligation to pay the taxes, it is quite probable that she will do so. The appointment of a receiver is a harsh proceeding, and should be resorted to only in extreme cases. In this respect the decree will be modified. The taxes, however, for the years named are past due, and, if not paid within 60 days after service upon the defendant of a certified copy of this decree, the complainant may pay

---

[1] Counsel cited, in support of this contention, *Conduitt v. Ross*, 102 Ind. 166; *Graber v. Duncan*, 79 Id. 565; *Shelton v. Codman*, 3 Cush. 318; *Ladd v. Noyes*, 137 Mass. 151.

them, and include the amount thereof in the sale ordered by this decree.

The complainant will recover costs of the court below, and the defendant costs of this Court.

The other Justices concurred.