PETITPREN v TAYLOR SCHOOL DISTRICT

Docket Nos. 49896, 49906, 50029. Submitted August 19, 1980, at Lansing.—Decided March 4, 1981. Leave to appeal applied for.

Vincent J. Petitpren was suspended from his position as superintendent of schools by the Taylor Board of Education after Roseanne Lee and others, officers of the Taylor Citizens' Education Committee, presented charges to the school board relating to alleged financial misconduct by Petitpren. A teachers' tenure act hearing was scheduled. Petitpren brought an action in Wayne Circuit Court, naming the school district, the school board, members of the school board and the charging individuals as defendants, alleging that he was not subject to the teacher tenure act, that his suspension was a breach of his employment contract, and that the meeting at which he was suspended was held in violation of the Open Meetings Act. At a hearing on plaintiff's motion for an order to show cause why he should not be reinstated and why the tenure hearing should not be enjoined, counsel for the school district indicated to the trial judge, Peter B. Spivak, J., that, under plaintiff's administration, schools in the district had been allowed to deteriorate so as to be in serious need of repair and that the district was facing a large deficit which was placing its state funding in jeopardy. The trial judge not only ordered the plaintiff and the representatives of defendant school district to meet but also ordered the school district to undertake actions to repair the schools and forestall the loss of state funding. After several hearings at which the parties could not agree to a resolution of the underlying question of Petitpren's suspension, the trial judge appointed George E. Bushnell, Jr., as receiver for the school district. When the school board attempted to rehire the attorney who had been representing it, the receiver opposed such rehiring on the basis that the attorney in question was

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 65 Am Jur 2d, Receivers § 15.
[2] 65 Am Jur 2d, Receivers § 22.
[3, 4] 65 Am Jur 2d, Receivers §§ 23-25.
[4] 65 Am Jur 2d, Receivers §§ 27, 29.
  68 Am Jur 2d, Schools § 42.

not satisfactory. The receiver obtained an order from the trial judge affirming the right of the receiver to hold the board's act of hiring counsel for naught. During the course of these proceedings, the Attorney General, the Taylor Federation of Teachers and Local 26M, Service Employees International Union, were allowed to intervene. Four members of the Taylor Board of Education sought leave to appeal the order appointing the receiver and the order affirming the right of the receiver to discharge the board's attorney. The Attorney General sought leave to appeal the order appointing the receiver. The school district sought leave to appeal the order appointing the receiver. Leave was granted by the Court of Appeals in each instance, and the appeals were consolidated for hearing. During the pendency of these appeals, the underlying action brought by Petitpren was resolved by a consent judgment between Petitpren and the original defendants. *Held:*

1. While the circuit courts have equitable power to appoint receivers when appropriate circumstances and facts are presented, and this power extends to the appointment of a receiver over a governmental body, a court should resort to appointment of a receiver only in extreme cases where less intrusive means are not available and other approaches have failed to bring about compliance with the court's orders.

2. It was error for the trial judge to appoint the receiver over the school district. Since the only question before the court was the propriety of the suspension of the superintendent of schools, the receivership of the school district cannot be said to be an appropriate ancillary remedy to the only matter before the court. While the trial judge was motivated by a belief that the safety of the staff and students and the financial solvency of the school district were in jeopardy, the judge, nevertheless, exceeded the appropriate limits of his jurisdiction by appointing a receiver for the school district under these circumstances.

Reversed.

1. COURTS — JURISDICTION — RECEIVERS — EQUITY — STATUTES — CONSTITUTIONAL LAW.

   A circuit court has jurisdiction to appoint a receiver in all cases pending before the court in which appointment of a receiver is allowed by law; the phrase "allowed by law" includes not only those cases in which the appointment of a receiver is provided for by statute but also those cases in which the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction (Const 1963, art 6, § 13, MCL 600.601; MSA 27A.601).

2. COURTS — JURISDICTION — EQUITY — RECEIVERSHIP — PUBLIC
   BODIES — CONSTITUTIONAL LAW.

   A circuit court's equitable power to appoint a receiver is not per
   se rendered invalid by reason of the fact that the subject of the
   receivership is a public body; the separation of powers principle
   goes not to the power of the court to appoint a receiver over a
   public body but, rather, to the scope and necessity of the
   receivership (Const 1963, art 3, § 2).

3. COURTS — REMEDIES — RECEIVERSHIP.

   The appointment of a receiver, being a harsh remedy, should be
   resorted to only in extreme cases where less intrusive means
   are not available and other approaches have failed to bring
   about compliance with the court's orders; unless specifically
   authorized by a statute, a suit for the sole purpose of the
   appointment of a receiver may not be maintained, as receiver-
   ship may only be had as an ancillary remedy to other relief
   being sought.

4. COURTS — RECEIVERSHIP — SCHOOL DISTRICTS — REMEDIES.

   It was error for a circuit court to appoint a receiver over a school
   district where the matter before the court was the question of
   the propriety of the suspension of the superintendent of that
   school district, since, even though the appointment of the
   receiver by the court was motivated by the court's perception
   that the safety of students and staff and the solvency of the
   school district were in jeopardy, receivership of the school
   district cannot be said to be an appropriate ancillary remedy to
   the matter before the court.

*Keller, Thoma, Schwarze & Schwarze, P.C.* (by
*Terrence J. Miglio),* for Taylor School District.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Gerald F.
Young* and *Paul J. Zimmer,* Assistants Attorney
General, for the Attorney General.

*Christy, Rogers & Gantz,* for Mary Buha and Ida
L. McIntyre.

*Joseph A. Golden* and *Lawrence Hochman,* for

Local 26M, Service Employees International Union.

*Bushnell, Gage, Doctoroff, Reizen & Byington,* for the receiver George E. Bushnell, Jr.

Before: J. H. GILLIS, P.J., and N. J. KAUFMAN and R. M. MAHER, JJ.

R. M. MAHER, J. The issues presented in the instant case require a somewhat detailed statement of the facts and proceedings. The events which give rise to this appeal began in early October of 1979 when defendants Lee, Buha, and McIntyre brought charges against plaintiff Petitpren alleging financial misconduct by plaintiff while he was serving in the post of superintendent of schools for the Taylor School District. Lee, Buha, and McIntyre were officers of the Taylor Citizens' Education Committee[1] and residents of the Taylor School District. They presented their charges to the defendant Taylor Board of Education as individuals and on behalf of their committee. On October 15, 1979, the board of education resolved to accept the charges from Lee, Buha, and McIntyre as individuals, rather than on behalf of the committee, and moved to immediately suspend plaintiff without pay, pending a hearing on the charges pursuant to the teachers' tenure act[2] which was set for November 16, 1979.

Before the hearing could be held, plaintiff brought suit claiming that he was not subject to the provisions of the teachers' tenure act, that his suspension constituted a breach of his employment

[1] The committee met regularly to discuss problems which confronted the schools and sought to make the board of education aware of the community's concerns. The members of the committee were apparently appointed by the defendant Taylor Board of Education.

[2] MCL 38.71 *et seq.;* MSA 15.1971 *et seq.*

contract, and that the meeting at which he was suspended had been held in violation of the Open Meetings Act.[3] Plaintiff obtained an order to show cause why he should not be reinstated and the tenure hearing enjoined. A hearing on the order to show cause was held on October 31, 1979. At this hearing, plaintiff's essential argument was that due process entitled him to some sort of hearing prior to suspension. Defendant Taylor Board of Education responded by arguing that plaintiff was subject to the teachers' tenure act and that it had complied with that act in handling the charges made against plaintiff. In the course of arguing that the plaintiff should not be reinstated, counsel for the board of education told the trial court that under plaintiff's administration the roofs on several of the schools in the district had been allowed to deteriorate and were in serious need of repair. In addition, counsel informed the court that the district was facing a 3 to 3-1/2 million dollar deficit and, as a result, was in danger of losing state funding. At this stage of the proceedings the future course of litigation in the instant case was drastically altered. After listening to counsel's argument concerning the roofs and the budget deficit, the trial court noted that counsel for the board of education was "making a great argument to me that I ought to appoint a receiver for this entire School Board operation". In response, counsel for the board informed the court that action was being taken by the present school administration to remedy the problems. At the close of the hearing, the trial court began by directing that plaintiff and defendant board of education meet on November 6, 1979. The trial court refused to reinstate plaintiff and refused to enjoin the tenure

---

[3] MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.*

hearing scheduled for November 16.[4] The trial court then went further and ordered the board to prove by November 6 or 7 that it had contracted to have every roof in need of repair fixed by December 1, 1979. The trial court additionally ordered that it be informed in writing by the next day as to whether the efforts to forestall the loss of state funding had been successful.[5] The trial court also stated that, if the school administration proved itself unable to handle these matters, consideration would be given to the appointment of a receiver.

Plaintiff and defendant board of education again appeared before the trial court on November 20, 1979, for the purposes of presenting a proposed consent judgment based on a settlement agreement which had been worked out by their attorneys. Counsel for the board indicated that his client had not yet approved the settlement, but that a meeting of the board was scheduled for that evening. He requested that the court postpone entry of the consent judgment so that the board could give its formal approval. The trial court agreed and added that if there was a continuing inability of the board to govern and make up its mind a receiver would probably be appointed the next week. The trial court additionally revealed that, if the appointment of a receiver became necessary, George Bushnell, an attorney experienced in educational administration, would be the receiver.

Another hearing was held on November 28,

[4] The trial court subsequently did issue a temporary restraining order enjoining the hearing from taking place.

[5] As required, the interim superintendent of the district sent a telegram to the trial court on November 1, 1979, indicating that the district had been given approximately three weeks in which to devise a plan eliminating any deficit spending and that no state funding had been suspended.

1979, at which the plaintiff, the board of education, and the charging parties were represented. The board had by this time approved the settlement agreement, but it soon became apparent that Lee, McIntyre, and Buha, the charging parties, did not concur with the board's actions. They were each allowed to present informal testimony regarding their view of the situation. It appears that they felt that it was in the best interests of the community to determine if plaintiff was actually guilty of financial impropriety, and they opposed the settlement because it provided for dismissal of their charges. They all expressed approval of the present school administration, but they felt that the board had approved the settlement because of the belief that a receiver would be appointed if they did not. They did not believe that the schools were in a dangerous state of disrepair and expressed confidence that the present administration could handle the problems that did confront the district. Each was opposed to the idea of receivership, believing instead that those elected to run the schools should be allowed to do so. It seems that they favored a resolution whereby a tenure hearing would be held on their charges and no receiver would be appointed. Their attorney also spoke in opposition to the proposed receivership, indicating that the lawsuit before the court did not involve the condition of the district but rather concerned plaintiff's claims of unlawful suspension and breach of contract. The court then indicated, with support from the board's attorney, that it believed the settlement had been approved for financial reasons and not simply to avoid receivership. The trial court was troubled, however, by the fact that members of the school board had apparently been telling the charging parties that the potential receivership and not the financial consid-

erations was the reason that the settlement had been approved. Indicating that the board was not yet clearly in charge of matters, the trial court then refused to approve the consent judgment, dissolved the temporary restraining order enjoining the tenure hearing, and appointed George Bushnell as receiver for the Taylor School District.

The parties again appeared before the trial court on December 6, 1979. Also present at this hearing was an attorney representing the receiver and attorneys representing two of the district's labor unions which were seeking to intervene. Plaintiff, the board, and the charging parties[6] had all presented proposed receivership orders, none of which was satisfactory to the receiver and his attorney. The trial court directed the receiver's attorney to prepare a receivership order which was subsequently entered on December 10, 1979.

Another hearing was held on January 18, 1980, at which counsel for the Attorney General appeared in addition to the parties who had previously been present. The Attorney General had filed a motion to rehear the trial court's order appointing the receiver, but the trial court indicated that, pursuant to discussions which had been held in chambers, it would deny the motion. A stipulation between the Attorney General and the receiver was then entered which provided that the issue of the trial court's authority to appoint the receiver was preserved and would be pursued through the trial and appellate courts, that the Attorney General did not question the legality or propriety of the receiver's actions, and that the receiver would promptly advise the Attorney General of any action taken pursuant to the receiver-

---

[6] By this time it was clear that the attorney for the charging parties actually represented only McIntyre and Buha. Lee indicated that she was seeking new counsel.

ship order. At this hearing the trial court also granted motions to set aside defaults against several of the defendants and granted motions to intervene.

It appears that on February 7, 1980, the board of education approved a motion to rehire as counsel for the district the attorney that had been representing the district in the trial court proceedings on this matter. The receiver had opposed the motion on the basis that the attorney in question was not satisfactory for the position, and, on the next day, counsel for the receiver obtained an order from the trial court confirming the receiver's authority to discharge the attorney, holding for naught the board's action in hiring him, and ordering the attorney to turn over to the receiver any and all files and papers pertaining to the district which were in his possession.

Based on these proceedings, three separate applications for leave to appeal, accompanied by various miscellaneous motions, were filed with this Court. In docket number 49896, four individual members of the board of education, represented by the then discharged attorney for the board, sought leave to appeal the trial court's orders appointing the receiver and confirming the receiver's authority to discharge the board's prior attorney. In docket number 49906, the Attorney General sought leave to appeal the order denying the motion to rehear the order appointing the receiver. In docket number 50029, the Taylor School District, through its new attorneys, also sought leave to appeal from the order appointing the receiver. This Court granted the applications for leave to appeal, stayed the receiver's orders, and consolidated the cases for purposes of appeal.[7]

---

[7] Briefs have been submitted by the school district, the receiver,

On May 9, 1980, while this matter was pending on appeal, a consent judgment was entered reflecting a settlement amongst the plaintiff, the district, the board, and the charging parties whereby each party relinquished all claims arising from the underlying dispute. Under the agreement, the district agreed to make a specified financial settlement with plaintiff and plaintiff tendered his unconditional written resignation. The trial court retained jurisdiction for the purpose of finally resolving the receivership issue and matters related to it. Accordingly, the underlying dispute has long since been finally resolved, and the instant appeal involves only the trial court's appointment of a receiver.

At the heart of this case is the issue of whether the trial court had the authority to appoint a receiver for the Taylor School District. It is clear that in this state the circuit court has been granted broad jurisdiction, subject only to certain specific exceptions. Const 1963, art 6, § 13, MCL 600.601; MSA 27A.601. The statute which specifically addresses the circit court's jurisdiction to appoint receivers provides in part:

"*Circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law.* This authority may be exercised in vacation, in chambers, and during sessions of the court. In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law." MCL 600.2926; MSA 27A.2926. (Emphasis added.)

This statute does not independently grant the

Local 26M (one of the intervening labor unions), the Attorney General, and defendants Buha and McIntyre. No briefs were submitted by the four individual members of the board or by defendant Lee.

court the authority to appoint receivers but rather confirms that appointment of a receiver is a remedy available to the court in situations where "allowed by law". Although there are several statutes which specifically allow appointment of a receiver,[8] the phrase "allowed by law" is not limited to these statutes, since the Supreme Court has recognized that there are cases where the trial court may appoint a receiver in the absence of a statute pursuant to its inherent equitable authority. See *Michigan Minerals, Inc v Williams,* 306 Mich 515, 525-527; 11 NW2d 224 (1943), *Grand Rapids Trust Co v Carpenter,* 229 Mich 491; 201 NW 448 (1924).[9] It thus becomes apparent that, as

[8] See, *e.g.,* MCL 600.2927(2); MSA 27A.2927(2), MCL 600.3348; MSA 27A.3348, MCL 600.4531; MSA 27A.4531, MCL 552.27; MSA 25.105, MCL 722.719(e); MSA 25.499(e), MCL 566.20; MSA 26.890.

[9] "We may doubtless inquire in this proceeding whether the court in appointing a receiver was wholly without jurisdiction. If we correctly interpret defendant's claim it is that a court of equity has no jurisdiction to appoint a receiver for a corporation except in a voluntary proceeding provided for in § 13563 *et seq.,* 3 Comp Laws 1915, and an involuntary proceeding by a judgment creditor under § 13583, 3 Comp Laws 1915. To these should possibly be added the provisions of part I, chapter 4, subdivision 2 of Act No. 84, Pub Acts 1921 (Comp Laws Supp 1922, § 9053[34-39]). This contention cannot be sustained. It entirely overlooks the inherent power of a court of equity. The jurisdiction of the English courts of chancery to appoint receivers is very old. 1 Clark on Receivers, § 78; *In re Newdigate Colliery, Ltd* (1912), 1 Ch 468. The sections above referred to are not exclusive of the inherent power of the courts of chancery, and the legislature instead of attempting to confine such power to cases coming within the statutes above noted has by § 12302, 3 Comp Laws 1915, expressly confirmed the broad powers which are inherent in chancery courts and has expressly enumerated among their powers the power to appoint a receiver. This court has in numerous cases recognized that the power to appoint a receiver rests in our chancery courts, among them see: *Ralph v Saginaw [sic, Shiawassee] Circuit Judge,* 100 Mich 164 [58 NW 837 (1894)]; *Corliss v Clinton Circuit Judge,* 212 Mich 476 [180 NW 478 (1920)]; *National Bank of Commerce v Corliss,* 217 Mich 435 [186 NW 717 (1922)]." *Grand Rapids Trust Co v Carpenter, supra,* 493-494.

The statute last referred to in the above quotation, 1915 CL 12302 is materially similar to its present version, MCL 600.2926; MSA 27A.2926, in that it refers to cases where appointment is "allowed by law".

used in the statute, the phrase "allowed by law" refers to (1) those cases where appointment of a receiver is provided for by statute and (2) those cases where the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction. Accordingly, the fact that no specific statute calls for appointment of a receiver in the instant case did not deprive the trial court of the authority to make such an appointment.

It is argued, however, that because the Taylor School District is a governmental entity the trial court was without authority to impose a receivership. The issue is stated both in general terms and as a function of the separation of powers principle embodied in the Michigan Constitution. Const 1963, art 3, § 2. We do not believe that the fact that the Taylor School District is a public body rendered the appointment of a receiver invalid per se. In many instances the judicial branch has been required to interfere to some extent with the functioning of public bodies aligned with other branches of government, and this interference has at times involved the appointment of a receiver or some similar functionary. *Wayne County Jail Inmates v Wayne County Sheriff,* 391 Mich 359; 216 NW2d 910 (1974), *Perez v Boston Housing Authority,* — Mass —; 400 NE2d 1231 (1980). See *Morgan v McDonough,* 540 F2d 527 (CA 1, 1976), *United States v Detroit,* 476 F Supp 512 (ED Mich, 1979). The separation of powers issue more properly involves the scope of the receivership and the question of whether such a remedy was demonstrated to be necessary.

"BHA [the Boston Housing Authority] evidently would put receivers in a separate class, and their appointment beyond the powers of an equity court,

when the effect of the receivership would be virtually to take over the main functions of public officials (who, by hypothesis, have been in violation of law). We think no such prohibitory rule attaches, although, as we shall emphasize, a receivership must be thoroughly justified on the facts, is always to be considered a remedy of 'last resort,' and therefore is not often applied in practice." (Footnotes omitted.) *Perez v Boston Housing Authority, supra,* 400 NE2d at 1249.

The cases cited by the parties on appeal reveal that the issue in a case such as that now before us is not so much whether the court had the *authority* to appoint a receiver as it is whether the appointment was *appropriate* under the facts and circumstances' presented. While we hold that the trial court did have the authority to appoint a receiver, we must next determine if the trial court erred by exercising that authority in the instant case.

Several principles exist which serve to guide the courts in the exercise of their discretion in the appointment of receivers. For example, it has consistently been noted that the appointment of a receiver is a harsh remedy which should only be resorted to in extreme cases. *Michigan Minerals, Inc v Williams, supra,* 525, *Jenks v Horton,* 96 Mich 13, 16; 55 NW 372 (1893), *Hosner v Brown,* 40 Mich App 515, 536; 199 NW2d 295 (1972), *lv den* 388 Mich 758 (1972). If less intrusive means are available to effectuate the relief granted by the trial court, a receiver should not be used. *People v Israelite House of David,* 246 Mich 606, 618; 225 NW 638 (1929). When other approaches have failed to bring about compliance with a court's orders, whether through intransigence or incompetence, a receivership may then be appropriate. See *Morgan v McDonough, supra, Newman v Ala-*

*bama,* 466 F Supp 628, 635-636 (MD Ala, 1979), *Perez v Boston Housing Authority, supra.* Unless specifically allowed by statute, a suit may not be maintained solely for the purpose of establishing a receivership, as the appointment of a receiver may only be made as an ancillary remedy to other relief sought. *National Lumbermans Bank v Lake Shore Machinery Co,* 260 Mich 440, 443; 245 NW 494 (1932). See *Francis Martin, Inc v Lomas,* 62 Mich App 706, 710; 233 NW2d 702 (1975) (once an action has been brought, either party may seek the appointment of a receiver).

The parties to this appeal do not dispute these principles as much as they dispute the question of whether application of these principles to the instant case rendered the appointment of a receiver appropriate. After careful review of the circumstances, we are of the opinion that the trial court erred in appointing a receiver for the Taylor School District.[10] It is easy to lose sight of the fact that the conditions of the buildings, the budget deficit of the district, and the relationship between the district and the labor unions representing its employees were not material to the resolution of the underlying suit.[11] This suit was instituted by plaintiff in order to challenge his suspension. The remedy sought by plaintiff was reinstatement. It is difficult to imagine how a receivership was in any way ancillary to the relief sought. Although the parties may not have objected as strenuously as

[10] We find without merit the receiver's claim that the district is estopped from challenging his appointment bacause it consented to and participated in the receivership. The record clearly reveals that the district opposed receivership. Certainly it did not request it. As to the district's cooperation with the receiver, there was little for the district to gain by seeking to sabotage the receiver's efforts.

[11] Although the attorney for the district raised these conditions in connection with the underlying dispute, they were not material to any of the issues involved. The merits, or lack thereof, of plaintiff's complaint did not turn on the existence of such conditions.

they might have, it is striking that none of the parties present in the case at the time the receivership was ordered had ever requested such relief. Imposition of the receivership was totally unconnected with the questions that needed to be resolved in this matter, as evidenced in part by the fact that the original dispute has long since been settled, while only the receivership issue remains.

Even if someone had requested a receiver or if the allegations which led to the receiver's appointment were in some manner an issue in the case, the appointment would still have been inappropriate. While there was much discussion and some sworn testimony concerning the problems facing the district, the conclusions to be drawn from the record are not so clear cut as to form the basis for the appointment of a receiver. While some people characterized the problems as extreme, others indicated that the problems were under control and not as bad as some suggested. Still others vacillated in their description of the problems. Despite this conflict in the characterization of the conditions in the district, nothing approximating an evidentiary hearing was ever held. Because of the harsh nature of the receivership remedy, the courts must proceed carefully before deciding that the circumstances are so extreme as to warrant such a remedy. As a result, an evidentiary hearing may often be necessary before a court exercises its inherent equitable authority to set up a receivership.

Even if the facts were totally uncontroverted and the actual conditions well established, the appointment of a receiver in the instant case would still have been inappropriate. Receivership is a remedy of last resort and should not be used unless less drastic approaches have failed to work

or would manifestly be doomed to failure. In the instant case, the trial court, from the bench, did order the district to take steps to repair the roofs and to keep the court informed of the status of the district's state funding. These orders were apparently complied with. At the November 20, 1979, hearing the trial court, responding to the fact that the board had not yet approved the proposed settlement agreement, indicated that it would probably appoint a receiver if the board continued to be unable to make up its mind. Despite the fact that the board did approve the agreement, the court apparently believed that the board's dual explanation of the reasons for the approval demonstrated a lack of leadership which necessitated receivership. Less than a month elapsed between the first hearing in this matter and the trial court's appointment of a receiver. During this time the only concrete directives issued by the trial court were fully complied with. There was no effort made to otherwise handle matters short of the receivership nor was the possibility of other less drastic approaches adequately explored.

We are not seeking to condemn the action taken by the trial court in the instant case. To the contrary, the trial court is to be commended for responding to even the possibility that students and staff in the Taylor schools were in physical danger or that the residents of the district were in danger of losing state funding for their schools. Additionally, the record demonstrates that the receiver and his counsel had the best interests of the citizens of Taylor at heart. The nature of receivership, however, requires that possibilities and the best of intentions are not enough. The issue is the extent of the trial court's response more than it is the fact that a response was made.

By placing the district in receivership, the trial court effectively displaced the elected officers of the district. While there are undoubtedly circumstances where judicial interference on such a scale is warranted, the record in the instant case fails to sufficiently establish that such was the case here. It may well be that the need for a receivership in the Taylor School District exists today. Our system of law requires, however, that the courts be very sure of the need for such a remedy before it is used.

Reversed.