WESTGATE v. WESTGATE.

1. Receivers—Purpose of Appointment.

A receiver is appointed to receive and preserve the property of the parties of litigation and in some cases to control and manage it for the persons or party who may be ultimately entitled thereto, the primary purpose of a receivership being to preserve the property and not to dissipate or dispose of it.

2. Same—Preservation of Property.

The duty of a receiver is not to litigate as between the adverse parties, but, under the order of the court, to preserve and care for the property and turn it over to the person who is ultimately decided to be entitled thereto.

3. Same—Attorney Fees.

A court may properly require receiver to pay expenses of receivership such as counsel fees for services rendered the receivership but may not order payment from receivership funds of counsel fees for a party claiming an interest in the fund before there has been a conclusion of divorced wife's suit to ascertain of what her husband's assets consisted, incident to which receiver for his property was appointed.

4. Same—Denial of Attorney Fees to Party.

Present denial of attorney fees to party claiming an interest in receivership fund during pendency of receivership is made without prejudice to right to apply for additional attorney's fees when the case is concluded.

Appeal from Kent; Hoffius (Cornelius), J. Submitted April 26, 1940. (Calendar No. 40,996.) Decided June 4, 1940.

Divorce proceeding between Bertha L. Westgate and Elmore L. Westgate. On petition of plaintiff for payment of attorney's fees from funds in hands of receiver appointed for certain assets under divorce proceedings. From order allowing attorney's fees, defendants appeal. Affirmed in part and reversed in part.    •

*Earl Waring Dunn,* for plaintiff.

*Michael Garvey,* for defendants.

POTTER, J.    Plaintiff filed a bill for divorce against defendant Elmore L. Westgate and November 30, 1938, obtained a decree, which was affirmed by this court November 9, 1939 (*Westgate* v. *Westgate,* 291 Mich. 18).

By paragraph 11 of the decree for divorce it was provided plaintiff should have a one-half interest in all of the properties of the Direct Refinery Stations; and a one-half interest in all properties owned by defendant, the ownership of which remained undisclosed. The trial court reserved full jurisdiction of the parties and of the subject matter "in order that this decree may be amended or supplemented with respect to and for the purpose of disposition of the fully disclosed property and property rights of the parties in connection with the award herein with permanent alimony to the plaintiff."

Subsequent to the time the decree of divorce was rendered, but before its affirmance by this Court, plaintiff filed a petition for leave to join certain parties as defendants, for accounting and receivership, in which she set up that defendant had concealed from her the nature and extent of his business, that he

drew some $16,446.08 from the bank in Grand Rapids the day following the institution of the suit in question, that he caused a wholesale license to deal in gasoline to be taken out in the name of his bookkeeper, Nellie Drake, that he had bought a large amount of trucks and rolling equipment in the names of individuals other than himself, that he concealed and refused to produce daily records of the business, that he set up a system of books in which appeared a series of entries purporting to show the major part of the ownership of the business was in persons other than himself, that defendant employed and had associated with him other persons in whose names title to the property had been taken; and asking that the court determine and decree *what, if any, interest* these defendants had in the property belonging to defendant; and for other relief.

The defendants named in this petition filed answers thereto denying all the material allegations contained in plaintiff's petition.

November 27, 1939, plaintiff filed a petition setting up the terms of the decree granted to her; alleging that a receiver had been appointed to take over the business of the Direct Refinery Stations, that the property was worth approximately $150,000, that the defendant had withdrawn some *$40,000 for his personal use,* that she was without funds with which to pay her attorney's fees; asking the trial court for an order permitting her to withdraw $2,500 from her share of the assets in control of the receiver to pay attorney fees; and asking that the receiver of the property be directed to pay her the sum of $500 a month during the pendency of the receivership, to be charged against her interest and ownership in the business and her share of the profits therefrom.

There was some testimony taken as to the amount of the business done by the receiver; and a showing

made upon her part of her financial inability to pay
her attorney more than $175. There was no proof
that defendant Westgate had drawn anything from
the fund in the hands of the receiver for anything.
The court directed the receiver to pay plaintiff's at-
torney $250 for services rendered to the receivership,
and the sum of $750 to be charged against the interests
of plaintiff, Bertha L. Westgate, in the assets and
earnings of such receivership. Defendants appeal.

The question is presented, whether or not the trial
court had a right to make the orders awarding at-
torney fees, the property in question being in the
hands of a receiver.

A receiver is sometimes said to be the arm of the
court, appointed to receive and preserve the property
of the parties to litigation and in some cases to con-
trol and manage it for the persons or party who may
be ultimately entitled thereto. A receivership is pri-
marily to preserve the property and not to dissipate
or dispose of it.

This is not an application for alimony either tem-
porary or permanent. The questions of temporary
and permanent alimony have been settled.

The property in controversy is in the hands of a
receiver and is to be held and disposed of by the re-
ceiver under the order of the court.

This suit is an application for an order directing
the receiver to pay out of the trust fund, to plaintiff,
attorney fees to be used by her in prosecuting the
suit for the determination of the amount of her per-
manent alimony.

The duty of a receiver is not to litigate as between
the adverse parties, but, under the order of the court,
to preserve and care for the property and turn it
over to the person who is ultimately decided to be
entitled thereto. Plaintiff alleges the property of the
defendant Westgate has been fraudulently disposed

of, and her proceedings are commenced for the purpose of recovering such property in case it shall belong to the defendant Westgate. The question, therefore, is whether the trial court had the power and authority to set apart and deliver to plaintiff a part of the trust fund to be used for the purposes of prosecuting this suit.

In *Taylor* v. *Sweet*, 40 Mich. 736, a bill was filed for the settlement of partnership affairs between the parties. The trial court, during the pendency of the proceeding, made an order directing that certain sums of money be paid over to the parties litigant. After determining that this sort of an order was appealable, the court said:

"If it were absolutely certain that a final accounting would restore from a party who had been overpaid the amount of such overpayment, it might be contended with some plausibility that this was a mere question of the custody and use of the moneys pending suit, and involved nothing more. But the fact cannot be overlooked that a temporary payment may be a final payment, and that it must and will become such unless the party receiving it shall be able to respond when the final settlement shall take place. If the fund were not a copartnership fund, and an order were made for its payment to one of the parties claiming it, subject to a similar accounting, and without any security that the other, if he should establish his right to it, should have it returned to him, the right to appeal would be manifest. The fact that a possible or even a probable return might be secured could not justify its being treated as a mere interlocutory proceeding. In any case where a party is unwarrantably deprived of the possession of property pending suit, the presumption is that he is to be restored at its conclusion. * * *

"The effect of this order is to divide the common fund at the rate of $300 at once and $200 a month be-

tween the parties so long as the litigation shall continue. This may prove a total destruction of rights; and as complainant asserts his poverty, independent of what is involved in the case, it must certainly prove such destruction if his interest in the concern shall leave him unable to respond on final settlement. * * *

"We * * * think the order was improvidently made."

In *Lakritz* v. *Wayne Circuit Judge,* 252 Mich. 148, mandamus was brought to review an order of the court in divorce proceedings. This court said:

"The order undertakes to give Lakritz money without adjudication that it is his, which, upon hearing, may be found to be his wife's. Even upon a sufficient bill on the trust theory, the most the court could do, pending determination on the merits, would be to preserve the property and income for the true owner."

It is the duty of the receiver to preserve and protect the property in his hands as receiver and to turn it over to the true owner at the termination of the litigation. Plaintiff seeks to follow the property alleged to have been fraudulently concealed and converted and to recover the amount of this property as a part of defendant Westgate's estate. If, however, the parties to whom she claims Westgate has diverted the property and concealed it should turn out to be the true owners, plaintiff, under the facts in this case, might be in a position of having a substantial award for attorney fees which she would be unable to pay.

Plaintiff claims, however, she is warranted in asking for attorney fees, and cites 1 Clark on Receivers (2d Ed.), p. 902, where it is said:

"A court of equity has jurisdiction over the allowance of costs and proper expenses by the party

creating or saving the fund in question, if his acts resulted in benefit to all.''

In connection with this statement, the only authority cited is *Trustees* v. *Greenough*, 105 U. S. 527, and *Harrison* v. *Perea*, 168 U. S. 311 (18 Sup. Ct. 129).

*Trustees* v. *Greenough, supra,* involved a suit filed by one Vose, a large holder of bonds of the Florida Railroad Company, on behalf of himself and other bondholders, against trustees of the internal improvement fund of Florida and former members of the board, to set aside fraudulent conveyances and to recover property belonging to the internal improvement fund which had been pledged as collateral security for the payment of mortgages thereon. A large amount of the trust fund was secured and saved. The management of the fund was taken out of the hands of the trustees. Agents were appointed by the Federal court to make sales of the land. A large number of sales were made, a large amount of money was realized, and dividends were paid among the bondholders who came in and took the benefit of the litigation. Vose, who had carried the burden of the litigation and who had advanced most of the expenses and succeeded in bringing about results, filed an application to be paid an allowance out of the fund for his expenses and services. The court laid down the well-settled rule that one of many parties having a common interest in a trust fund who, at his own expense, takes proper proceedings to save it from destruction and restore it for the purposes of the trust, is entitled to reimbursement for his reasonable costs, counsel fees, charges and expenses, incurred in the fair prosecution of the suit and in reclaiming and rescuing the trust fund and causing it to be subjected to the purposes of the trust. The plaintiff was allowed, in addition to these sums, expenses for per-

sonal services and private expenses. The court said he was not a trustee,—he was a creditor suing on behalf of himself and other creditors for their own benefit and advantage, and the reasons which applied to his expenditures incurred in carrying on the suit to recover trust property did not apply to personal services and private expenses. The court added:

"We can find no authority whatever for any such charge by a person in his situation."

As a result thereof, it disallowed the sum of $15,003.35 for private expenses and $34,625 for personal services.

In *Harrison* v. *Perea, supra,* suit was filed by a sole surviving administrator of the estate of Jose L. Perea and as one of the heirs-at-law against the defendant Harrison to recover the value of money alleged to have been fraudulently converted by Harrison to his own use. The court found that defendant falsified accounts, attempted to convert the whole estate wrongfully and knowingly, attempted to charge interest for the conversion of the assets of the estate, mingled the trust funds with his own; and the question arose whether or not the defendant was entitled to charge the expenses against the estate. The trial court held that, having wilfully obstructed the distribution of the assets of the estate and rendered it necessary that the complainant should obtain possession of the property by the institution of this suit, the necessity for which arose entirely out of Harrison's wrongful conduct, he was not entitled to compensation for his fraudulent acts, but that Perea was authorized to recover attorney fees in connection with attempting to make Harrison disgorge the money of the estate which he had embezzled and converted to his own use. The case is analogous to *Perrin* v. *Lepper,* 72 Mich. 454.

We are unable to find any warrant for an order directing the receiver to pay attorney's fees in this suit to one of the parties in litigation. The order for the payment of $250 to be paid to plaintiff's attorney for services rendered the receiver is affirmed. This order is made without prejudice to the right of plaintiff to apply for additional attorney's fees when the case is concluded.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.