## BUTLER *v.* BUTLER.

1. DIVORCE—ALIMONY—PROPERTY SETTLEMENT—MODIFICATION OF DE-
CREE.

A circuit judge has power to alter divorce decree as to alimony
specified in a prior decree even where the preceding decree
was based upon a property settlement between the parties and
did not in terms provide for retention on the part of the
court of power to change it (CL 1948, § 552.28).

2. SAME—ALIMONY—MODIFICATION OF DECREE—STATUTES.

It is unnecessary to state a reservation of power of modification
as to alimony in a decree of divorce, where statute gives the
trial court such power (CL 1948, § 552.28).

3. SAME—ALIMONY—CHANGE OF CIRCUMSTANCES.

Reduction of alimony from $1,100 per month to $400 a month
*held,* not an abuse of the discretion vested in the circuit
judge, especially in view of husband's loss of position paying
him $60,000 per year and court's stated willingness to consider
wife's petition for increase should circumstances change for
the better.

4. SAME—APPEAL—DE NOVO HEARING.

An appeal in a suit for divorce is heard by the Supreme Court
*de novo,* but great weight is given to the view of the facts
taken by the judge who heard and saw the witnesses.

5. SAME—RECEIVERS—INJUNCTION—DISCRETION OF COURT.

Refusal of trial court to appoint receiver to sequester assets of
husband or to enjoin him from removing his assets from the
State *held,* not to have constituted an abuse of discretion, since
the trial court has basic responsibility for enforcement of
its own decree and considerable discretion in means to be
employed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation § 733.
[2] 17 Am Jur, Divorce and Separation § 728.
[3] 17 Am Jur, Divorce and Separation § 744 *et seq.*
[4] 3 Am Jur, Appeal and Error §§ 833, 883.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 14, 1959. (Docket Nos. 66, 67, 68, Calandar Nos. 47,717, 47,718, 47,719.) Decided July 13, 1959.

Bill by Gladys Law Butler against Edward Enright Butler resulted in divorce. Petition by defendant for modification of decree in respect to alimony. Petitions by plaintiff for contempt and for receiver in connection with enforcement of decree consolidated on hearing and dismissed. Decree modified. Plaintiff appeals. Affirmed.

*Davidow & Davidow* (*Larry S. Davidow,* of counsel), for plaintiff.

*Hindes, Matheny & Schureman* (*Jeptha W. Schureman,* of counsel), for defendant.

EDWARDS, J. Plaintiff-appellant secured a divorce from defendant-appellee on October 25, 1954. The decree, signed by Circuit Judge Frank Ferguson, was based in large measure upon a property settlement agreement between the parties.

Among its other terms, defendant-appellee was ordered to pay $1,100 per month to his wife as alimony. There was no provision specifically reserving to the court power to amend this order. No appeal was taken from this decree.

Defendant-appellee filed a petition March 29, 1957, seeking a reduction of the alimony previously ordered, on the basis of a claimed marked change of his financial circumstances. Three petitions were then filed by plaintiff-appellant seeking various measures to enforce the previous alimony order. The circuit judge, after reference to the friend of the court and receipt of a careful report, and after full hearing, reduced the previous alimony order to $400

per month and denied plaintiff-appellant's 3 petitions.

The facts are accurately set forth in the circuit judge's opinion:

"In this case we have several motions. A motion to sign an order vacating a restraining order which I had passed on on a previous hearing, which was not presented to the court for signature, but which is now being presented.

"A motion to modify this decree, to reduce the payments of alimony.

"Motion by C. H. Mayne & Associates, Inc., to pay $20,480.82 into court and dismiss that cause of action, file No. 567,808.

"And motion for the appointment of a receiver.

"This matter has been before the court from time to time since last July. We took testimony on October 24 and October 25, 1957. We made a reference to the friend of the court for further investigation at that time, which has been completed, and we came back into court on Tuesday of this week to complete the proceedings. Testimony was taken throughout the day yesterday.

"A review of the testimony that has been offered reveals that at the time of the entry of the decree, Mr. Butler was chairman of the board of Vinco Corporation, and his salary was $60,000 a year. It was upon that basis that a property settlement had been reached because at that time he did not anticipate either a reduction in salary or the loss of his job. He lost his position on April 29, 1957, and at that time he was earning $32,500. There had been reductions between the time of the granting of the decree and his final service with the company. He had received several cuts in salary up until the time that he lost his position.

"I think from the testimony in the case Mr. Butler has made an honest and sincere effort to find employment since he lost out at Vinco, but he has been unable to find any kind of employment, and at the

present time and for the past 6 months he has been endeavoring to get into some kind of construction business in Florida in order to build, and create an income. He finds it impossible to find a position with other companies throughout the country at his age.

"This business of getting started in the construction building in Florida has been a rough one. He can only now get started if he can raise $800 to pay for plans which have been drafted by architects.

"In order to get started, he says that he is going to sign a note for a lot worth $12,500, and it will be indorsed by his brothers, and he is going to borrow money to finance the cost of building.

"At the present time it appears in the record that his total assets are $88,045, and that his liabilities are $35,947, leaving him a net worth of $52,098.

"Now, his assets consisted, primarily, of an account receivable in the amount of $40,887 from the 14765 Michigan Avenue Corporation, payable at the rate of $600 per month, on which there is a balance owing of $39,600, and an interest in the C. H. Mayne & Associates, Inc., which is to be liquidated in the amount of $21,480.82. One thousand dollars of this, by consent of the parties, has been withdrawn and given to one of the children, leaving $20,480.82 due from the C. H. Mayne & Associates, and they are ready now to distribute or pay Mr. Butler that amount.

"When it became known to Mrs. Butler and her counsel that this money was about to be paid to Mr. Butler, Mrs. Butler instituted a suit against Mr. Butler and C. H. Mayne & Associates, asking for an injunction restraining C. H. Mayne & Associates from paying this $20,480.82 to Mr. Butler and asking the court to appoint a receiver.

"Counsel could have come into this court before me in this case that is now pending, and have asked for a restraining order and for the appointment of a receiver. Instead of that, the matter was presented to another judge in this court, Judge Rashid, who

issued a restraining order, restraining the C. H. Mayne & Associates from paying this money to Mr. Butler; and also obtained an order to show cause, which was returnable before another judge in this circuit, Judge Weideman, asking Mr. Butler to show cause before Judge Weideman 'why an injunction should not be granted and why a receiver should not be appointed.

"By consent of counsel, this order to show cause was brought before me, and I agreed to hear all matters pertaining to this case and dispose of the same.

"Now, C. H. Mayne & Associates have come into this court, and on the record tendered to the court this $20,480.82 and asked that the suit against them and Mr. Butler be dismissed because they have no interest in this $20,480.82, and they desire to pay it into court. * * *

"Mr. Emery [attorney for C. H. Mayne & Associates] asks that this particular money be paid into court, and that the case be dismissed. There wasn't any objection to that on the part of counsel for Mrs. Butler, so an order may be presented discontinuing that cause, and paying this money in to the clerk of this court.

"In reviewing the facts in this case, we find that under the decree, Mrs. Butler received $70,000 cash within 1 year after the decree was signed, a 1954 Cadillac automobile; that Mr. Butler agreed and did discharge personal accounts of Mrs. Butler to the amount of not over $1,500.

"Also, it appears that the decree had called for the payment of $150 per month for each son that remained with Mrs. Butler, and that those payments have been made, and that there is nothing due now under the decree for the children in this case.

"In addition to that, it was agreed by the parties, and it was ordered by the court, that Mr. Butler pay Mrs. Butler $1,100 per month permanent alimony; and also that he pay, and he did pay $10,000 to Mr.

Davidow, attorney fees, for services rendered to Mrs. Butler.

"At the time that decree was entered, Mr. Butler had been earning $60,000 per year, and although his earnings had been reduced in April of 1957—April 29th, he continued to pay Mrs. Butler, and that the account now stands as being paid up to June 1, 1957, with the exception of a balance of $25. Now, I don't mean to say that it was paid up on April 29, 1957, because several payments were made from that time up until September, but it pays the account in full with the exception of this $25 up to June 1, 1957.

"During that time it appears that in addition to the amount of cash received, Mr. Butler has paid approximately $35,000 in alimony.

"At the present time, Mrs. Butler has invested her money in stocks, and the total investment, under the evidence in this case, is $69,770, as of December 31, 1957. And on margin she owes $3,206.08, or net holdings of $66,563.92.

"According to the testimony that was offered yesterday, she has received $5,045 per year in dividends; and according to exhibit F, which was offered today and received from her counsel who does her tax work, Mr. Surridge, she has received, in dividends, in 1957 $4,103.35.

"So, with a capital investment of $66,563.92, and a yearly income from said investments of $5,045, she maintains an apartment in the Whittier apartments, paying $275 a month rent, she entertains and pays food and restaurant bills for herself and her friends, $200 a month; she thinks that $300 a month, or $3,600 a year is sufficient for clothing. She pays out $125 a month for transportation, and $100 a month for incidents—a total of $1,000 per month. About $500 a year for insurance, doctor bills and club dues about $50 for each, and before moving into the Whittier, maintained maid service of $20 a week, which was included in the Whittier rental. So, her expenditures are $1,050.50 a month.

"Now, what about Mr. Butler? Mr. Butler, at the time of the decree, had a piece of property in St. Louis, Missouri, valued at $41,666, which was sold. His share was $37,800, and he used this money to pay debts—1 of them was the Mercantile Commerce Bank & Trust Company of St. Louis, in the amount of $28,156.59. The rest of the money he used to pay personal debts, and he has detailed them on the record in this case, so that he had recovered nothing, that is, for his own personal use, from the sale of this property.

"He also had 1,100 shares of Vinco stock, which he was purchasing on a payment plan, and that the value was $5,500, and the amount he owed was $4,012, and that if he did receive anything, it was a very small amount.

"He has detailed his liabilities. To Mr. Osplack, a former associate of his, he owes $5,000. He claims he has no interest in the Butler Brothers Lumber Company in Palm Beach, Florida, and that he owes about $2,500 to them. He owes $15,000 to the National Bank of Detroit, which is secured by life insurance policies, on which, at the present time, the premiums have not been paid in full. He testified that he owes about $500 on these insurance premiums. Of course, they are not pressing him for the loan as long as he keeps the premiums paid up on these policies and the amount of the cash surrender value of the same would be able to retire the loan. He owes the Detroit Bank $1,200, and he has miscellaneous bills of $11,747—a total of $35,947.

"Now, on his Mayne Company account, he is entitled to receive $20,480.82 at the present time which is the payment of his interest in the C. H. Mayne & Associates, Inc., but he explains that he is obligated to pay an income tax of $5,000 on that portion that he already received and that he will be required to pay approximately $5,000 on the present balance which he is now receiving—a total of $10,000.

"It follows that out of this $20,480.82 he will have cash available $10,480.82. That seems to be the only

cash asset that Mr. Butler has, or the only asset that can be turned into cash.

"While it is true that it is the duty of a husband to maintain a wife who obtains a divorce for wrongs committed by him during the marriage, according to the station in life which she had been accustomed to, it follows, also, that some duties cannot be performed. At the time Mr. Butler undertook these duties, he was in a position to perform them, but he has suffered the loss of his job, and financial loss in the meantime that now he is no longer in a position to comply with the terms of that decree. He hasn't been in a position to comply with the terms of that decree since April 29, 1957, and prior thereto, because of various reductions in salary from $60,-000 to $32,500.

"Now, his case must be reviewed as to his ability to pay on his present assets and earnings.

"If Mrs. Butler will live within her means, she has sufficient capital and income to support herself. If she insists on living as she is now living, she hasn't. It is only proper that this court supplement her present income by requiring Mr. Butler to pay what he can afford to pay. If Mr. Butler becomes established, and earns sufficiently to increase the payments in the future, he will be required to do so, but this amount that he will be required to pay at the present time is based upon his ability to pay.

"This motion was filed some time prior to June 1, 1957. I believe that it was back in April, March 29, 1957, petition to modify decree and reduce permanent alimony.

"It is the practice of the court to predate any order that it now makes to modify the decree, to the date that the motion was filed. In this case, however, payment has been made which brings this account up to June 1, 1957, with the exception of $25. I feel that as of that date, June 1, 1957, this decree should be modified and Mr. Butler should be required to pay $400 a month. He therefore owes as of this date, 8

months at $400, a total of $3,200, plus $25, balance as of June 1, 1957, a total of $3,225.

"This order of $400 a month will continue until the further order of the court.

"I think that Mr. Butler ought to pay this $3,225 out of the moneys he is now receiving from the C. H. Mayne & Associates, and after this money is paid in to the clerk of the court, the court will order that the clerk of this court pay to the friend of the court $3,225, and the difference the court will order the clerk of this court to pay to Mr. Butler.

"I will not appoint a receiver in this case, and I will not require Mr. Butler to file a bond for performance of this order, even though he is now domiciled in Palm Beach, Florida. I don't think Mr. Butler is the man that will try to shirk his obligation if he is financially able to pay it. I don't think it is necessary for him to be required to post any bond for that purpose.

"Therefore, orders may be entered dismissing the suit of Gladys L. Butler *v.* C. H. Mayne & Associates, Inc., a Michigan corporation, and Edward E. Butler, file No. 567,808.

"An order may be presented vacating the restraining order heretofore issued by Judge Rashid. And an order may be entered requiring C. H. Mayne & Associates to pay $20,480.82 in to the clerk of this court. An order may be entered vacating a restraining order that this court heretofore ordered vacated in October of last year. An order may also be entered denying plaintiff's motion for a receiver and denying an injunction as prayed for in the motion that was entered in file No. 567,808.

"The decree will be modified requiring Mr. Butler to pay $400 per month beginning June 1, 1957, and continuing until the further order of the court. And orders are to be presented requiring the clerk of this court to pay to the friend of the court for the account of Mrs. Butler, $3,225, and the balance to Mr. Butler, whatever that amounts to.

"I think that disposes of all motions that I have before me." * * *

"*Mr. Schureman* (attorney for defendant): I think also before your Honor was the order to show cause for contempt.

"*The Court*: That will be dismissed."

Appellant states her 3 questions for review thus:

"1. Was plaintiff wife entitled to enforcement of the alimony provision of the decree entered in pursuance of a settlement agreement?

"2. Should a receiver have been appointed to sequester assets of defendant husband in Michigan, who had left Michigan and established residence in Florida?

"3. Should an injunction restraining the defendant from removing his assets from Michigan have been issued?"

As to the first question, few legal questions have been as clearly answered as has the question of the power of a circuit judge to alter the terms of alimony specified in a prior decree, even where the preceding decree was based upon a property settlement between the parties and did not in terms provide for retention on the part of the court of the power to change it.

The Michigan statute dealing with divorce makes a specific grant of authority to the court to "revise and alter such decree, respecting the amount of such alimony."

"After a decree for alimony or other allowance, for the wife and children, or either of them, and also after a decree for the appointment of trustees, to receive and hold any property for the use of the wife or children as before provided the court may, from time to time, on the petition of either of the parties, revise and alter such decree, respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and pay-

ment of the principal and income of the property so held in trust, and may make any decree respecting any of the said matters which such court might have made in the original suit." CL 1948, § 522.28 (Stat Ann 1957 Rev § 25.106).

Generally, the existence of such a statutory provision has been held to write in a reservation of the power to modify such a decree.

"The effect of a statute which continues the jurisdiction of the trial court to modify the directions of the decree for the support of the wife is to write a reservation of power to modify into every divorce decree." 17 Am Jur, Divorce and Separation, § 730.

See, also, annotation 109 ALR 1068.

And, in a well-considered and frequently-cited case where a divorce decree was squarely founded upon a property settlement and contained no specific reservation of power to modify, Justice WIEST and a unanimous Court held:

"It was not necessary to state reservation of the power of modification in the decree." *Eddy* v. *Eddy,* 264 Mich 328, 330.

See, also, *Havens* v. *Havens-Anthony,* 335 Mich 445; *Gumbin* v. *Gumbin,* 337 Mich 283; *Lamb* v. *Lamb,* 348 Mich 557.

We recognize, of course, that appellant contends the testimony does not show such change of circumstances in appellee's affairs as to warrant a reduction in alimony from $1,100 to $400. The basic change of circumstances involving appellee's loss of a $60,000 a year salary can, however, hardly be ignored. Nor can we find from appellant's argument as to implications to be drawn from appellee's associations and assets that the circuit judge was wrong in viewing appellee's financial situation as

materially changed. The reduction is a large one, and it may be that appellee could be forced to continue payments at the previous figure, at least for a time, by applying thereto substantially all of his assets. The circuit judge, however, apparently felt this relief was to some considerable degree related to restoration of his earning power, and indicated clearly a willingness to consider appellant's petition for increase should circumstances change for the better.

We do not deal in this instance with the customary divorce problem of dividing poverty between the now-separated members of a family. The appellant wife is not charged with any child support. And the terms of the decree gave her assets which apparently are approximately equal to those now possessed by appellee husband.

Although we hear such matters as this *de novo*. we give great weight to the view of the facts taken by the judge who heard and saw the witnesses. *Donaldson* v. *Donaldson,* 134 Mich 289; *Hartka* v. *Hartka,* 346 Mich 453. We cannot say with certainty, from this record, that the circuit judge abused the discretion vested in him. *Austin* v. *Austin,* 308 Mich 139; *Fischer* v. *Fischer,* 320 Mich 176.

We feel the same way concerning appellant's last 2 questions dealing with security for enforcement of the court's decree. This judge has basic responsibility for enforcement of his own decree and considerable discretion in the means to be employed. *Krachun* v. *Krachun,* 355 Mich 167. He has had these parties before him for some years and has doubtless come to know much more as to what to expect from them than we could glean from this record. We do not feel justified in holding unfounded his expressed confidence in being able to secure compliance with

his own order without the injunction or receivership sought.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.