BAND v LIVONIA ASSOCIATES

Docket No. 97220. Submitted January 17, 1989, at Detroit. Decided March 21, 1989. Leave to appeal applied for.

On July 19, 1970, C & R Investment Company, Inc., whose sole stockholders are Robert C. Horvath and Cornel Peleo, entered into a purchase agreement with a group of sellers (the Morganroth Group) for a 115-acre parcel of land (Lot No. 1). The agreement provided for a purchase price of $1,000,000 with a $15,000 deposit. On February 19, 1971, Livonia Associates, a Michigan limited partnership (the partnership), was formed with Horvath and Peleo as the general partners and Jerry Band, L. H. Rosenthal, and others, as limited partners. Its purpose was to acquire, hold, develop, improve and manage for investment Lot No. 1. Horvath and Peleo were given the specific power to acquire Lot No. 1 by entering into a land contract. The partnership authorized a purchase price of $1,265,000 with a $295,000 down payment. On February 22, 1971, three transactions occurred. (1) C & R entered into a land contract with the Morganroth Group to purchase Lot No. 1 for $1,000,000 with $200,000 down. (2) C & R assigned its purchaser's interest in the land contract to Cornel Peleo and his wife, Viora Peleo. (3) The Peleos entered into a land contract with the partnership to sell Lot No. 1 for $1,265,000 with $295,000 down. Belcrest Realty Company, a sole proprietorship owned by Horvath, received a sales commission of approximately $80,000 in connection with the sale to the partnership. On December 3, 1971, the Peleos purchased a second parcel of land (Lot No. 2) by land contract for $9,000 with $3,000 down. On April 15, 1972, the Peleos sold Lot No. 2 to the partnership by land contract for $18,000 with $6,000 down.

On April 27, 1977, plaintiffs, Band, Rosenthal, and other limited partners, filed a complaint against Horvath and Cornel Peleo in the Oakland Circuit Court alleging negligent perfor-

REFERENCES

Am Jur 2d, Partnership §§ 409 et seq., 460, 483-503, 851 et seq.; Receivers §§ 15 et seq., 133, 184 et seq.

See the Index to Annotations under Partners and Partnerships and Receivers and Receiverships.

mance of their duties as general partners in several regards. Plaintiffs also alleged that Horvath and Peleo had made an undisclosed profit for the sale of Lot No. 1 and asked for an accounting and payment of the secret profit. Plaintiffs also requested the appointment of a receiver to take possession and control of the partnership's assets. The trial court, Francis X. O'Brien, J., denied the motion for appointment of a receiver, ordered the parties to deposit their 1977 capital contributions with an escrow agent, and ordered Horvath and Peleo to produce the partnership's books and records. The court thereafter entered an order determining that defendants Horvath and Peleo and an added defendant, Michael J. Hand, a limited partner, had not complied with the court's order. The plaintiffs' motion for the appointment of a receiver was then granted. Plaintiffs then amended their complaint to add as defendants Viora Peleo and Belcrest Realty. The court then, pursuant to the receiver's motion, ordered the Peleos to assign their purchasers' interest in the land contract between C & R and the Morganroth group to the partnership, assign their sellers' interest in the land contact between the Peleos and the partnership to the partnership, and execute a quitclaim deed to the partnership. The court also ordered the withholding of a $22,500 commission payment to Belcrest Realty for application to Horvath's $18,600 capital contributions debt. Plaintiffs then amended their complaint to seek dissolution of the partnership. Defendants then moved to dismiss the receiver because the order appointing him failed to require a bond. The court denied the motion, and amended its previous order nunc pro tunc requiring the receiver to post a $50,000 bond. The bond was posted and the order nunc pro tunc was entered thereafter. The court then granted plaintiffs' motion for partial summary judgment holding that Horvath and Peleo breached their duty to disclose to the partnership the profit made on the sale of both lots and ordering them to hold the profits from the sale of Lot No. 1 for the partnership's benefit. Defendants' motion to disqualify the trial judge was denied. Following a bench trial, the court ordered dissolution of the partnership. The court then dismissed the count which alleged that Viora Peleo had not contributed any money to the acquisition of Lot No. 1 and which sought reformation of the land contract. The land was sold by the receiver for $1,830,000. A claim by Belcrest Realty against the partnership was denied as untimely and claims by Horvath and Peleo for compensation for their management of the partnership affairs were denied. The court authorized the receiver to distribute the money from the sale of the land to

the partners. Defendants Livonia Associates, Horvath, the Peleos and Belcrest Realty appealed alleging numerous errors.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in appointing the receiver. The actual conditions necessitating the appointment of a receiver were established, thus, a full evidentiary hearing was not necessary.

2. The nunc pro tunc order was the correct procedure to remedy the mistake of not ordering the receiver to post a bond.

3. The receiver did not exceed the scope of his authority by withholding a commission payable to Belcrest Realty in satisfaction of Horvath's unpaid capital contributions, by requesting the court to order the Peleos to assign and convey their land contract interest in Lot No. 1 to the partnership, and by using his expertise as an attorney to file motions and review contracts. The receiver acted in the best interests of the partnership. The trial court did not abuse its discretion in awarding reasonable fees to the receiver.

4. The trial court properly concluded that Horvath and Peleo had a duty to disclose to the partnership the profits they realized on the sale of both lots and that they breached that duty. Despite their disclosure to one of the limited partners, each partner had a right to know and, therefore, there was no genuine issue of material fact regarding such breach and partial summary judgment was properly granted.

5. There was substantial and clear evidence to justify the decree of dissolution. The trial court did not err in failing to determine the interests of the partners in the order of dissolution and in relying on the schedule of the partners' interests in the partnership agreement.

6. Viora Peleo was not deprived of her interests without a hearing. Her due process rights were not violated.

7. The trial court did not err in denying Belcrest Realty's claim on the ground that it was untimely and in denying the claim of Horvath and Peleo on the ground that the partnership agreement did not provide for compensation to general partners for services performed as managers of the partnership.

8. The record is devoid of any actual bias or prejudice on the part of the trial judge. The motion to disqualify the trial judge was properly denied.

Affirmed.

1. COURTS — JURISDICTION — RECEIVERS — EQUITY.

A circuit court has jurisdiction to appoint a receiver in all cases pending before the court in which appointment of a receiver is

allowed by law; the phrase "allowed by law" includes not only those cases in which the appointment of a receiver is provided for by statute but also those cases in which the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction (MCL 600.2926; MSA 27A.2926).

2. COURTS — REMEDIES — RECEIVERS.

The appointment of a receiver, being a harsh remedy, should be resorted to only in extreme cases where less intrusive means are not available and other approaches have failed to bring about compliance with the court's orders.

3. COURTS — RECEIVERS — BONDS — ORDERS NUNC PRO TUNC.

A trial court must provide for a bond when appointing a receiver; an order which does not require a receiver to give security is not void; the entering of an order nunc pro tunc is the correct procedure to remedy the mistake (MCL 600.2926; MSA 27A.2926).

4. ACTIONS — RECEIVERS.

A receiver may take all appropriate steps in law and equity, when persons other than the receiver have property in their hands which should be in the hands of the receiver or when a person diverts or attempts to divert from the receiver property which belongs to the receiver, to reduce such property to possession and protect it from being diverted from its lawful custodian.

5. ATTORNEY AND CLIENT — RECEIVERS — EMPLOYMENT OF COUNSEL.

A receiver who is himself a lawyer should not employ other counsel except in an extraordinary case, as where unusual complications arise; it is the plain duty of such a receiver to render legal services to the estate himself.

6. PARTNERSHIP — DUTY TO DISCLOSE INFORMATION.

Each partner has the duty to disclose to all the other partners all known information that is significant and material to the affairs or property of the partnership (MCL 449.20, 449.21; MSA 20.20, 20.21).

7. PARTNERSHIP — DISSOLUTION.

An order for dissolution of a partnership need not determine the interests of the partners, however, a court may do so on the basis of the proofs presented absent an express agreement for a different method of determination.

8. PARTNERSHIP — COMPENSATION FOR SERVICES OF PARTNERS.

A partner is not entitled to compensation for services performed

on behalf of the partnership unless the express terms of the agreement provide therefor (MCL 449.18[f]; MSA 20.18[f]).

9. JUDGES — DISQUALIFICATION.
   A trial judge will not be disqualified absent a showing of actual bias or prejudice.

*Alspector, Sosin, Mittenthal & Barson, P.C.* (by *Ralph Sosin*), for plaintiffs.

*Kiefer, Allen, Cavanagh & Toohey* (by *John B. Kiefer*), for defendants.

Before: McDONALD, P.J., and DOCTOROFF and NEFF, JJ.

PER CURIAM. Defendants appeal from orders of the Oakland Circuit Court appointing a receiver, granting partial summary disposition to plaintiffs pursuant to GCR 1963, 117, now MCR 2.116, and dissolving defendant Livonia Associates, a Michigan limited partnership. Defendants raise several claims of error. Finding no issue which merits reversal, we affirm.

Plaintiffs held limited partnership interests in defendant Livonia Associates (partnership). Defendants Robert Horvath and Cornel Peleo were the general partners. On July 19, 1970, C & R Investment Company, Inc. (C & R) entered into a purchase agreement with a group of sellers known as the Morganroth Group for a 115-acre parcel of land in Livonia (Lot No. 1). The sole stockholders of C & R were defendants Horvath and Peleo. The agreement provided for a purchase price of $1,000,000 with a $15,000 deposit to be credited to the purchase price when the sale was completed.

On February 19, 1971, the partnership was formed. Its purpose was to acquire, hold, develop, improve and manage for investment Lot No. 1. Horvath and Peleo, as general partners, were

given the specific power to acquire Lot No. 1 by entering into a land contract. The partnership authorized a purchase price of $1,265,000 with an initial down payment of $295,000.

On February 22, 1971, three transactions occurred. First, c & r entered into a land contract with the Morganroth Group to purchase Lot No. 1. The purchase price was $1,000,000 with an initial payment of $200,000. The balance was payable in yearly installments with interest at eight percent per annum. On that same day, c & r assigned its purchaser's interest in the land contract to defendants Cornel Peleo and his wife, Viora Peleo. Also on February 22, 1971, Peleo and his wife entered into a land contract with the partnership to sell Lot No. 1 for $1,265,000 with an initial payment of $295,000, the balance payable in yearly installments with interest at eight percent per annum. Defendant Belcrest Realty Company, a sole proprietorship owned by defendant Horvath, received a sales commission of approximately $80,000 in connection with the sale to the partnership.

On December 3, 1971, Peleo and his wife purchased a second parcel of land (Lot No. 2) by land contract for $9,000 with an initial payment of $3,000. On April 15, 1972, the Peleos sold Lot No. 2 to the partnership by land contract for $18,000 with an initial payment of $6,000.

Plaintiffs filed a complaint on April 27, 1977, alleging that Horvath and Peleo had neglected to properly perform their duties as general partners by: failing to maintain the residence on the partnership property, resulting in a loss of rental income; failing to pay real estate taxes on Lot No. 1 in 1974, 1975 and 1976, resulting in the danger of the lot's being sold at a state tax sale on May 7, 1977; failing to make the land contract payment; refusing to provide plaintiffs access to partnership

records; failing to take action against Jerry Spero, a limited partner who had not paid his capital contribution for two years; defaulting on their own obligation to make capital contributions; refusing to provide information regarding the rezoning of the land; and depositing capital contributions into an account other than the partnership's. In count II, plaintiffs alleged that Horvath and Peleo had made an undisclosed profit for the sale of Lot No. 1. Plaintiffs asked for an accounting and payment of the secret profit. Plaintiffs also requested that the court appoint a receiver to take possession and control of the partnership's assets.

On June 8, 1977, the trial court denied plaintiffs' motion for appointment of a receiver. The parties were ordered to deposit their 1977 capital contributions with a specified escrow agent who would apply the sums to the past due payment on the Lot No. 1 land contract. Horvath and Peleo were also ordered to produce the books and records of the partnership. On August 3, 1977, the court entered an order determining that defendants Horvath and Peleo and an added defendant, Michael J. Hand, a limited partner, had not complied with the June 8, 1977, order.

On October 28, 1977, the trial court granted plaintiffs' motion to appoint a receiver. The receiver was authorized to stand in the place of the general partners, collect contributions and disburse funds, make a thorough investigation, and hire an accountant and legal representative to assist him.

On February 3, 1978, the trial court entered an order allowing plaintiffs to amend their complaint. Plaintiffs added Belcrest Realty as a defendant and information regarding the acquisition of Lot No. 2. Count III alleged that Viora Peleo had not contributed any money to the acquisition of Lot

No. 1. Plaintiffs requested a reformation of the land contracts. They also asked the court to impose a lien against any commissions that Belcrest Realty might receive in connection with the sale of partnership property in order to secure the claims against Horvath.

On April 26, 1978, the trial court, pursuant to the receiver's motion, ordered Peleo and his wife to assign their purchasers' interest in the land contract between c & r and the Morganroth group to the partnership, assign their sellers' interest in the land contract between the Peleos and the partnership to the partnership, and execute a quitclaim deed to the partnership. The court also directed the receiver to withhold the commission payment of $22,500 to Horvath, doing business as Belcrest Realty, and apply it to Horvath's $18,600 capital contributions debt.

On July 5, 1978, the complaint was amended to allow plaintiffs to seek dissolution of the partnership. On July 10, 1978, defendants brought a motion to dismiss the receiver because the order appointing the receiver failed to require a bond. Defendants argued that, because the receiver was not duly appointed, the October 28, 1977, order appointing the receiver and the subsequent actions of the receiver were null and void. The court denied the motion and entered an order nunc pro tunc requiring that the receiver post a bond.

The court granted partial summary judgment to plaintiffs on August 23, 1978, holding that Horvath and Peleo had a duty to disclose to the partnership the profit made on both lots and that they breached that duty. Horvath and Peleo were ordered to hold, as trustees for the partnership, all benefits and profits derived from the sale of Lot No. 1 to the partnership.

On May 30, 1979, the court denied defendants'

motion to disqualify the trial judge. On April 4, 1980, following a bench trial, the court ordered dissolution of the partnership based on MCL 449.32(1)(b), (c) and (d); MSA 20.32(1)(b), (c) and (d). The receiver was given the authority to commence accounting and wrapping-up proceedings commensurate with the findings of the court.

On June 4, 1980, defendants moved to dismiss counts II and III of the complaint. The trial court denied the motion as to count II because the relief had already been granted. The trial court dismissed count III.

The land was eventually sold for an aggregate amount of $1,830,000. On September 7, 1982, the court denied Belcrest Realty's claim against the partnership on the ground that it was untimely filed. On February 4, 1983, the court denied Horvath's and Peleo's claims against the partnership because the partnership agreement did not provide that the general partners should be compensated for management of the affairs of the partnership.

On December 18, 1985, the court authorized the receiver to distribute money from the sale to the partners. The court also authorized the receiver to continue to collect the land contract payments and make annual distributions to the partners.

This appeal was filed on December 9, 1986. On May 1, 1987, plaintiffs filed a motion to require a complete filing of the transcript, but did not specify which transcripts were missing. On May 27, 1987, this Court entered an order compelling defendants to file a complete transcript. After an exhaustive search of the files, however, we have determined that many transcripts are missing.

The record on appeal consists of, inter alia, the transcript of any testimony or other proceedings in the case appealed. MCR 7.210(A)(1). Appellants have a duty to file with the trial court the full

transcript of testimony and other proceedings in the trial court except as otherwise provided. MCR 7.210(B)(1)(a). We limit our review to what is presented on appeal and will not consider any alleged evidence or testimony proffered by the parties where there is no record support. *Nye v Gable, Nelson & Murphy,* 169 Mich App 411, 414, 416-417; 425 NW2d 797 (1988).

I

Defendants' first four issues are concerned with the appointment of the receiver. First, defendants claim that the trial court abused its discretion when it appointed a receiver. We disagree. The power to appoint receivers is inherent in courts of equity. *Michigan Minerals, Inc v Williams,* 306 Mich 515; 11 NW2d 224 (1943). The primary purpose of a receiver is to preserve property and to dispose of it under the order of the court. *Westgate v Westgate,* 294 Mich 88, 91; 292 NW 569 (1940); *Cohen v Cohen,* 125 Mich App 206, 214; 335 NW2d 661 (1983), lv den 417 Mich 1100.35 (1983). MCL 600.2926; MSA 27A.2926 states:

> Circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law. This authority may be exercised in vacation, in chambers, and during sessions of the court. In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law. Subject to limitations in the law or imposed by the court, the receiver shall be charged with all of the estate, real and personal debts of the debtor as trustee for the benefit of the debtor, creditors and others interested.

The statute provides that circuit court judges

"may appoint receivers in all cases pending where appointment is allowed by law." The phrase "allowed by law" does not require the presence of statutory authority, although such exists in certain situations. Rather, this Court has interpreted that phrase to mean "(1) those cases where appointment of a receiver is provided for by statute and (2) those cases where the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction." *Petitpren v Taylor School Dist,* 104 Mich App 283, 294; 304 NW2d 553 (1981). The appointment of a receiver is a harsh remedy and should only be resorted to in extreme cases. If less intrusive means are available to effectuate the relief granted by a trial court, a receiver should not be used. The appointment of a receiver may be appropriate when other approaches have failed to bring about compliance with the court's orders. *Petitpren,* p 295.

We find no error in the court's appointment of a receiver. Less intrusive means were attempted when, on June 8, 1977, the court entered an order that the parties pay the full amount of their 1977 capital contributions to a specified escrow agent by June 4, 1977. However, defendants Horvath, Peleo and Hand did not comply with the court's order. Horvath and Peleo were each delinquent in their capital contributions by approximately $22,000. Both Horvath and Peleo stated that they were unable to comply with their financial obligations. A court has the basic responsibility of enforcing its own orders and has considerable discretion in choosing the means to be employed. *Butler v Butler,* 356 Mich 607, 618; 97 NW2d 67 (1959).

The trial court recognized that serious, immediate and irreparable harm would occur if a receiver were not appointed. Defendants admitted that

they did not have funds to pay their capital contributions. They admitted that they did not pay the taxes. The land contract was in default. Part of the land had already been sold to pay taxes and the redemption period would soon expire.

Defendants claim that the court should have conducted a full evidentiary hearing before ruling on the motion to appoint a receiver. Defendants cite *Petitpren* for the proposition that the appointment of a receiver without an evidentiary hearing is erroneous. In *Hofmeister v Randall,* 124 Mich App 443, 447; 335 NW2d 65 (1983), this Court discussed the role of an evidentiary hearing:

> Due to the harsh nature of a receivership, a court must proceed carefully before deciding that the circumstances warrant such remedy. Therefore, an evidentiary hearing may often be necessary before a court exercises its inherent equitable authority to appoint a receiver. *Petitpren, supra,* 104 Mich App 297. However, *Petitpren* also suggested that such a hearing would be unnecessary if the facts were totally uncontroverted and the actual conditions were established. *Id.*

In the instant case, no material factual dispute existed. The important facts were uncontroverted. Defendants do not indicate what additional evidence they would have presented to refute the uncontroverted facts. We conclude that the actual conditions were established which necessitated the appointment of a receiver.

The receiver was appointed on October 28, 1977. On May 25, 1978, defendants filed a motion to remove the receiver because of the failure to post bond. On July 10, 1978, following a hearing, the trial court amended its previous order nunc pro tunc and required that the receiver post a $50,000 bond as stipulated to by the parties. The bond was

filed on August 2, 1978, and the order nunc pro tunc was entered on August 23, 1978. Defendants claim that failure to initially provide for a bond in the order appointing the receiver renders the appointment void and nullifies all the actions of the receiver. Defendants state that the nunc pro tunc order was ineffective and not an appropriate remedy. Plaintiffs do not dispute that, under MCL 600.2926; MSA 27A.2926, the trial court must provide for a bond, but contend that the nunc pro tunc order properly corrected the trial court's inadvertent mistake. We agree with plaintiffs' position.

There is no Michigan case law which has dealt with the effects of a court's failure to provide for a bond under the statute. See *Smith v Menominee Circuit Judge,* 53 Mich 560, 564; 19 NW 184 (1884). However, except in a few jurisdictions, an order not requiring a receiver to give security is not void. When the order of appointment does not require the receiver to give a bond, a failure to give one is not fatal, even in a jurisdiction where a statute provides that a receiver must execute and file a bond before entering on his duties. 75 CJS Receivers, § 76. We adopt the majority view. We further conclude that entering an order nunc pro tunc is the correct procedure to remedy the mistake. A nunc pro tunc order is the proper procedure to enter an order "which should have been made as a matter of course, and as a legal duty." *Grand Rapids v Coit,* 151 Mich 109, 110; 114 NW 880 (1908). The order appointing the receiver should have provided for a bond as a matter of course and as a legal duty, thus, it was appropriately remedied by the nunc pro tunc order.

Defendants next claim, citing several instances, that the trial court permitted the receiver to act outside the scope of his powers. We disagree.

The receiver derives his authority from statutes and court rules and from the order of appointment and specific orders which the appointing court may thereafter make. *Woodliff v Frechette,* 254 Mich 328; 236 NW 799 (1931). The trial court's order appointing the receiver authorized the receiver to (1) stand in the place and stead of the general partners with full powers to sell partnership property in accordance with the partnership agreement, (2) collect contributions and disburse funds in accordance with the partnership agreement and for the purpose of preserving the assets, (3) make a thorough investigation and report to the court with a recommendation as to specifics, and (4) hire an accountant or legal representative to assist the receiver to the extent he shall deem necessary.

In *Westgate, supra,* p 91, our Supreme Court held:

> A receiver is sometimes said to be the arm of the court, appointed to receive and preserve the property of the parties to litigation and in some cases to control and manage it for the persons or party who may be ultimately entitled thereto. A receivership is primarily to preserve the property and not to dissipate or dispose of it.
>
> * * *
>
> The duty of a receiver is not to litigate as between the adverse parties, but, under the order of the court, to preserve and care for the property and turn it over to the person who is ultimately decided to be entitled thereto.

Defendants allege that the trial court allowed the receiver to exceed the scope of his authority by withholding a commission payable to Belcrest Realty in satisfaction of Horvath's unpaid capital contributions. We disagree. Pursuant to the receiver's motion, after the April 26, 1978, hearing, the

court entered an order allowing the receiver to withhold a $22,500 commission payable to Horvath, doing business as Belcrest Realty, and apply the money to Horvath's capital contributions account. Horvath admitted that Belcrest Realty was his assumed name for his business as a real estate broker. He further admitted that, in contravention of the court's order, he had not paid his capital contributions. He stated that he did not have the funds to do so.

When persons other than the receiver have property in their hands which should be in the hands of the receiver, or when any person diverts or attempts to divert from the receiver property which belongs to the receiver, the receiver may take all appropriate steps in law and equity to reduce such property to possession and protect it from being diverted from its lawful custodian. *Pontiac Trust Co v Newell,* 266 Mich 490, 499-500; 254 NW 178 (1934). We conclude that the receiver was acting under his duty to preserve the assets of the partnership and his authority to collect capital contributions.

Defendants next claim that the receiver acted outside the scope of his authority when he filed a motion requesting that the court order the Peleos to assign and convey their land contract interest in Lot No. 1 to the partnership. Again, we disagree. The receiver was in the process of selling a portion of Lot No. 1 and, in order to close the transaction, the partnership had to acquire title. The funds from the sale would be used to discharge the underlying contract on Lot No. 1 with the Morganroth Group and to pay back taxes. Without an assignment of the land contract, the partnership would have had to use its money for the nonpartnership purpose of vesting title to Lot No. 1 in the Peleos. We conclude that the receiver

was acting under his duty to preserve the assets of the partnership and did not exceed the scope of his authority.

We reject defendants' argument that the receiver adopted the position of the plaintiffs in violation of his duty to the partnership. We conclude that the receiver was acting in the best interest of the partnership. This interest at times coincided with the position of plaintiffs, but did not evidence an improper bias by the receiver.

Next, defendants argue that the receiver exceeded his authority because he acted as an attorney for the partnership. The court's order appointing the receiver authorized him to hire legal representation when he deemed necessary. Instead of hiring separate legal representation, the receiver used his own expertise as an attorney to file motions, review contracts and the like. We conclude that, in performing these tasks, the receiver was not acting as an attorney for the partnership but was acting in conjunction with his duties as a receiver. This was clearly within the receiver's scope of authority.

A receiver is under no legal duty to perform legal services for the benefit of the estate committed to his charge. Where the necessity for legal counsel arises, the court may provide the receiver with counsel. The necessity for the employment of counsel must be clearly apparent. Where the receiver himself is a lawyer, he should not employ other counsel except in an extraordinary case, as where unusual complications arise. 75 CJS, Receivers, § 161. It is the plain duty of such receiver-attorney to render legal services to the estate himself and save the estate a duplication of attorney fees. 66 Am Jur 2d, Receivers, § 294.

Finally, defendants contend that the trial court abused its discretion in approving the fees of the

receiver. We disagree. The amount of compensation to be awarded to the receiver is within the trial court's discretion. Receivers have a right to compensation for their services and expenses. *Fisk v Fisk,* 333 Mich 513, 518; 53 NW2d 356 (1952); *Cohen, supra.* Our review of the record leads us to conclude that, for the amount of time the receiver expended and in light of the various duties the receiver was required to perform in order to protect the property, including numerous court appearances, the fees awarded to the receiver were reasonable and not an abuse of the trial court's discretion.

II

On August 23, 1978, the trial court granted plaintiffs' motion for partial summary judgment, holding that Horvath and Peleo had a duty to disclose to the partnership the profit they realized on the sale of both lots and that they breached that duty. Horvath and Peleo were ordered to hold, as trustees for the partnership, all benefits and profits derived from the sale of Lot No. 1 to the partnership. Defendants claim that the trial court erroneously granted partial summary disposition to plaintiffs. We disagree.

The motion for partial summary judgment was granted pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), that there was no genuine issue of material fact. When ruling on a motion for summary judgment under GCR 1963, 117.2(3), the affidavits, pleadings, depositions and other documentary evidence must be considered by the court. The party opposing the motion must come forward with some proof to establish the existence of an issue of material fact. *Bennison v Sharp,* 121 Mich App 705, 718; 329 NW2d 466 (1982), lv den 417 Mich 1100.13 (1983).

The undisputed evidence reveals that Lots No. 1 and No. 2 were sold to the partnership for more than the Peleos paid. As to Lot No. 1, the purchase agreement was entered into prior to the formation of the partnership, but the land contracts for purchase were signed subsequent to the formation of the partnership. Deposition testimony of Horvath and Peleo was presented wherein they admitted that they had not informed the limited partners that the lots were sold to the partnership for more than the Peleos' purchase price. Defendant Hand testified that Horvath and Peleo had told him that they had an interest in the property but they did not tell him the amount. Defendants Horvath and Peleo took the position that they had no duty to disclose. The trial court held that there was a duty to disclose and that Hand's representation did not constitute disclosure to the partnership.

The duty of the general partners in this case is based on §§ 20 and 21 of the Uniform Partnership Act:

> Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability. MCL 449.20; MSA 20.20.

> (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property;

> (2) This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner. [MCL 449.21; MSA 20.21.]

Section 20 has been broadly interpreted as imposing a duty to disclose all known information that is significant and material to the affairs or property of the partnership. *Jaffa v Shacket,* 114 Mich App 626, 640; 319 NW2d 604 (1982). The trial court properly concluded, based on the law, that defendants had a duty to disclose.

Defendants claim, however, that there was a genuine issue of material fact as to whether they failed to disclose. On February 20, 1985, defendants filed a motion to set aside the partial summary judgment. In support of this, on March 15, 1985, defendants filed three affidavits wherein three limited partners, one being Hand, stated that they had been told that Lot No. 1 had been previously acquired by defendants for $1,000,000. Defendants aver that, under MCL 449.12; MSA 20.12, notice to any partner operates as notice to or knowledge of the partnership. We disagree. Defendants' reliance on § 12 of the act is misplaced. Section 12 comes under part III of the act which concerns relations of partners to third persons dealing with the partnership, whereas defendants' duty to disclose comes under part IV of the act which concerns the relations of partners to one another.

The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. Partners are held to a standard stricter than the morals of the marketplace and their fiduciary duties should be broadly construed, "connoting not mere honesty but the punctilio of honor most sensitive." 59A Am Jur 2d, Partnership, § 420, p 453. The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information. Each partner has the right

to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. 59A Am Jur 2d, Partnership, § 425. Thus, disclosure to one or several partners does not fulfill this duty as to every other partner. We conclude that there was no genuine issue of material fact and a partial summary judgment was properly granted.

III

On April 4, 1980, following a bench trial, the trial court ordered dissolution of the partnership based upon MCL 449.32(1)(b), (c) and (d); MSA 20.32(1)(b), (c) and (d), which states:

(1) On application by or for a partner the court shall decree a dissolution whenever:

* * *

(b) A partner becomes in any other way incapable of performing his part of the partnership contract,

(c) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business,

(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.

Defendants claim that the trial court erred in ordering dissolution of the partnership because there was insufficient evidence on which dissolution could be based. We disagree. The trial court found that there was dissension and acrimony among the partners, that the purposes of the

partnership had been frustrated by the personal interests of certain individual partners in their nonpayment of obligations and by the financial incapabilities of other partners, that Horvath's and Peleo's breach of their fiduciary duties prejudicially affected the continuation of the partnership, and that some of the limited partners no longer trusted Horvath and Peleo as general partners and were reluctant to place any additional investment money in their hands. Our review of the record convinces us that there was substantial and clear evidence to justify a decree of dissolution.

Defendants also contend that the trial court erred by failing to determine the interests of the partners in the order of dissolution. We disagree. The partnership agreement contained a schedule of the partners' interests. There is no requirement that such determination must be made part of an order of dissolution, although the court may do so on the basis of the proofs presented absent an express agreement for a different method of determination. *Gertz v Fontecchio,* 331 Mich 165, 170; 49 NW2d 121 (1951).

IV

Defendant Viora Peleo was added as a defendant in plaintiffs' second amended complaint. On April 26, 1978, the trial court, pursuant to a motion by the receiver, ordered the Peleos to assign their purchasers' and sellers' land contract interests in Lot No. 1 and to quitclaim their interest in the lot to the partnership. The order also provided that the execution of the assignments and the quitclaim deed would not affect any claim or right of the Peleos to any money which might be due from the partnership. The receiver had recognized the

Peleos' claim for the $265,000 difference in the purchase prices.

A hearing was held on June 4, 1980, on the Peleos' motion to dismiss counts II and III of plaintiffs' second amended complaint. Plaintiffs objected to dismissing Viora Peleo because of her possible claim against the partnership, reserved by the April 26, 1978, order.

On September 3, 1980, the court entered an order dismissing count III of the complaint, which alleged that Viora Peleo did not contribute any money to the acquisition of the land and which sought reformation of the land contract.

Defendants now claim that Viora Peleo's due process rights were violated because her property interest was abrogated without notice or a hearing. We disagree. Viora Peleo was represented by counsel on both April 26, 1978, and June 4, 1980. In fact, on June 4, 1980, Viora Peleo's attorney stated that Viora Peleo sought to be dismissed from the case and sought no claim or recovery. The attorney stated that plaintiffs' objection to her dismissal on the grounds that she had a claim against the partnership was a "red flag." The court ordered that count III be dismissed and "that with regards to Mrs. Peleo, she does not seek any rights or relief under what's been heretofore entered." Both parties agreed that the court's interpretation was correct.

However, in the order of September 3, 1980, the language which stated that Viora Peleo had abandoned her claim was crossed out. Thus, Viora Peleo's possible claim of right to any money owed to her by the partnership has been preserved. Viora Peleo has not been deprived of her interests without a hearing and, thus, her due process rights have not been violated.

V

The third receiver's report filed on July 20, 1981, contained claims for compensation by Horvath and Peleo for hours expended as general partners in managing and conducting partnership business. On September 2, 1981, the court entered an order stating that the last date for filing claims would be September 16, 1981. On February 17, 1982, Belcrest Realty filed a motion to allow its claim for approximately $295,000 for expenses and services rendered to the partnership, pursuant to the partnership agreement.

On August 12, 1982, the court barred the Belcrest Realty claim because it was not timely filed, but stated that it would consider Horvath's and Peleo's claims.

A hearing on these claims was held on September 7, 1982. The court found that the claims of Horvath and Peleo were claims for recovery of services performed as managers of the partnership. Because the agreement contained no provision for compensation to general partners, their claims were denied by order of February 4, 1983.

Defendants now argue that the trial court erred in denying defendants' claims for services rendered to the partnership. We disagree. The trial court did not err in denying Belcrest Realty's claim on the ground that it was untimely. Belcrest Realty clearly had notice of the deadline for filing claims, but did not file its claim until after the deadline set by the court. The court did not err in denying the claims of Horvath and Peleo on the ground that the partnership agreement did not provide for compensation. A partner is not entitled to compensation for services performed on behalf of the partnership unless the express terms of the agreement provide for such compensation. MCL

449.18(f); MSA 20.18(f); *Alford v Lehman,* 350 Mich 446, 457; 86 NW2d 330 (1957).

VI

On May 30, 1979, defendants brought a motion to disqualify the trial judge pursuant to GCR 1963, 912.2(2). Defendants claimed that the trial court had prejudged trial issues. This motion was not timely, a factor which may be used to decide whether the motion should be granted. GCR 1963, 912.3(a). Defendants' motion could have been denied on the basis of untimeliness. *People v Bettistea,* 173 Mich App 106, 123; 434 NW2d 138 (1988). However, the record reflects that the trial judge denied the motion because he did not find any basis for disqualifying himself. A trial judge will not be disqualified absent a showing of actual bias or prejudice. *MacDonald v Ford Motor Co,* 117 Mich App 538, 542; 324 NW2d 489 (1982). Defendants base their assertion of bias and prejudice on the fact that the majority of the court's decisions on motions and preliminary matters were against defendants. Repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice. *Mahlen Land Corp v Kurtz,* 355 Mich 340, 350; 94 NW2d 888 (1959).

The record reflects that over the nine years that this case was before the court, the trial judge exercised extreme patience and courtesy toward the parties. Decisions were made on the basis of the facts and law before the court. The record is devoid of any actual bias or prejudice on the part of the trial judge.

Affirmed.