# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH CONSTANT,

        Plaintiff-Appellant,

v

JAMES M. HAMMOND,

        Defendant-Appellee.

UNPUBLISHED
August 16, 2018

No. 336489
Oakland Circuit Court
LC No. 2016-155099-CZ

---

JOSEPH CONSTANT,

        Plaintiff-Appellant,

v

DTE ELECTRIC COMPANY,

        Defendant-Appellee.

No. 336620
Oakland Circuit Court
LC No. 2016-153631-CZ

---

JOSEPH CONSTANT,

        Plaintiff-Appellant,

v

LELAND PRICE,

        Defendant-Appellee.

No. 337483
Oakland Circuit Court
LC No. 2016-155238-CZ

---

JOSEPH CONSTANT,

        Plaintiff-Appellant,

v

LELAND PRICE,

No. 338455
Oakland Circuit Court
LC No. 2016-155238-CZ

-1-

Defendant-Appellee.

JOSEPH CONSTANT,

       Plaintiff-Appellant,

v                                                                                           No.  338686
                                                                                            Oakland Circuit Court
DTE ELECTRIC COMPANY,                                                                        LC No.  2016-153631-CZ

       Defendant-Appellee.

Before:  FORT HOOD, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

In Docket No.'s 336489, 336620, 338455 and 338686, plaintiff appeals as of right orders granting summary disposition in favor of defendants James M. Hammond, DTE Electric Company, and Leland Price, and in Docket No. 337483 appeals by leave granted an order of the trial court allowing plaintiff to file a fourth amended complaint upon the posting of a security bond. The cases were consolidated on appeal. We affirm in all cases and further order damages against plaintiff and in favor of all defendants for plaintiff's filing of these vexatious appeals pursuant to MCR 7.216(C). We therefore remand each case to its respective trial court for a determination of actual damages and expenses incurred, including reasonable attorney fees, to be awarded to each defendant as a result of these vexatious appeals.

All of these appeals find their genesis in a 2013 action filed by defendant, DTE Electric Company ("DTE") against plaintiff in Oakland County Circuit Court seeking an injunction to enter onto plaintiff's residential property to trim trees and conduct line clearance on the property (hereafter "the 2013 case"). Defendant, Leland Prince ("Prince"), served as DTE's counsel in that case and defendant, James M. Hammond ("Hammond") is a DTE employee who provided an affidavit in that case attesting that the tree trimming and line clearance on plaintiff's property was necessary and that plaintiff was preventing DTE from entering onto his property to perform its job functions. The 2013 case, assigned to and heard by Judge Shalina Kumar, resulted in DTE obtaining a preliminary injunction and, later, a permanent injunction. Plaintiff appealed the decision concerning the preliminary injunction and a panel of this Court affirmed. *DTE v Constant*, unpublished per curiam opinion of the Court of Appeals, issued December 4, 2104 (Docket No. 317976).

In order to fully understand the basis for plaintiff's appeals in the instant matters as well as the substantial judicial resources that have been expended in these consolidated cases, this Court finds it necessary to provide a detailed history of plaintiff's complaints in the Oakland Circuit Court and his actions undertaken therein. Thus begins the laborious task of untangling the myriad claims and actions that led to the present appeals.

After his unsuccessful appeal of the DTE preliminary injunction, plaintiff filed an action against DTE in Oakland Circuit Court (Docket No. 336620), alleging that the 2013 case brought by DTE was a fraud and brought to defraud him of compensation he claims due him for DTE's line clearance right-of-way and easement over his property.[1] Plaintiff further alleged malicious prosecution, abuse of process, fraudulent misrepresentation, false pretenses, wrongfully issued preliminary injunction, fraud on the court, violation of MCR 2.114(D), libel, and violations of civil rights, due process and privacy. This action was initially assigned to Judge Cheryl Matthews, and when DTE moved to have the case reassigned to Judge Kumar (she having presided over the original 2013 case), plaintiff moved to disqualify Judge Kumar, stating that she was biased or prejudiced against him. Plaintiff noted that he had filed a federal lawsuit against Judge Kumar for violating his due process and civil rights, exceeding and abusing her judicial discretion, and for deliberate affirmative misconduct in the 2013 case, that he had filed a complaint against Judge Kumar with the judicial tenure commission, and that he was preparing to sue her in Oakland Circuit Court for fraud. In his motion to disqualify Judge Kumar, plaintiff used violent, hateful, abusive and derogatory language of the most outrageous kind to describe Judge Kumar. Though the case was nevertheless reassigned to Judge Kumar, the case was later reassigned to Judge Matthews when Judge Kumar recused herself. Plaintiff also moved to disqualify Judge Matthews, claiming that she too was biased and prejudiced against him after Judge Matthews sanctioned him for filing a motion that violated MCR 2.114(D) and MCR 2.114(F). In his motion to disqualify Judge Matthews, plaintiff stated, "I believe that Judge Mrs Matthews is a superlatively biased, prejudiced and a very bigoted human being and possibly a Klan-level graded racist." This case came to a conclusion when Judge Matthews granted DTE's motion for summary disposition. On defendant DTE's later motion, Judge Matthews found that plaintiff's action was frivolous and awarded DTE sanctions against plaintiff (Docket No. 338686).

Plaintiff also brought an action against defendant Prince, alleging that he was part of the alleged fraud in the 2013 case, that Prince libeled plaintiff in that case, and that he "knowingly signed, drove, and navigated the documents of the lawsuit, in full knowledge that it violated MCR 2.114(D), and the professional and ethical codes of conduct that he is bound by, and he knew that the entire act and process was abusive of the processes of law and was fully criminal in conduct, malicious and libelous and tortious" (Docket No. 3378455). That case was assigned to Judge Michael Warren, whom plaintiff also moved to disqualify, alleging that Judge Warren was complicit with DTE's alleged scheme to defraud plaintiff of claimed due compensation from DTE and was partial toward DTE's defense team. During the course of that action, Judge Warren entered an order allowing plaintiff to file a fourth amended complaint only upon the posting of a surety bond (Docket No. 337483). This case was resolved through Judge Warren's grant of Prince's motion for summary disposition based on MCR 2.116(C)(8) and res judicata. Prince's later motion for sanctions for plaintiff's filing of a frivolous action was stayed pending appeal.

---

[1] In 2010 DTE trimmed several trees on plaintiff's property, prompting plaintiff to complain to DTE that such trees were unlawfully trimmed and seeking from DTE, among other things, payment of $16,000 in cash for easement rights over his property.

Finally, plaintiff brought an action against defendant Hammond alleging that an affidavit provided by him in the 2013 case defamed and libeled him and that Hammond was a part of the alleged fraud in the 2013 case (Docket No. 336489). This case was assigned to Judge Rae Lee Chabot who recused herself for the stated reason of "personal fear of the in Pro Per Plaintiff" whereupon the matter was reassigned to Judge Warren. Judge Warren granted summary disposition in favor of defendant Hammond, finding that plaintiff's response to the motion was untimely and not in conformity with page limitations, because plaintiff failed to state a claim on which relief could be granted, because res judicata and the statute of limitations barred plaintiff's claims, and because plaintiff abandoned his claims. On defendant Hammond's later motion, the trial court awarded him sanctions for plaintiff's frivolous action.

On appeal, plaintiff first asserts that DTE and its employees, including Prince and Hammond, engaged in a civil conspiracy against plaintiff to obtain property easement rights over his property and avoid paying plaintiff for it by committing a fraud upon the court in the 2013 case. We disagree.

We first note that a civil conspiracy claim was not brought by plaintiff against the any of the defendants in the trial court. In civil actions, the failure to properly raise an issue in the trial court generally constitutes a waiver of that issue on appeal. *Johnson Family Ltd Pship v White Pine Wireless, LLC*, 281 Mich App 364, 377; 761 NW2d 353 (2008). We thus decline to review any claim based on civil conspiracy. Plaintiff's claim on appeal, however, could be read as an argument that reversal is warranted on the trial courts' grant of summary disposition in defendants' favor on plaintiff's claim of fraud upon the court based upon untrue statements made in the 2013 case. To the extent that is what plaintiff is instead asserting, this Court reviews a trial court's grant or denial of summary disposition de novo. *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 287; 731 NW2d 29 (2007).

"In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013). A summary disposition motion brought under subrule (C)(7) "does not test the merits of a claim but rather certain defenses," such as prior judgment or statute of limitations, that may eliminate the need for a trial. *Nash v Duncan Park Com'n*, 304 Mich App 599, 630; 848 NW2d 435 (2014).

A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004). When deciding a motion under subrule (C)(8), we accept all well-pleaded factual allegations as true and construe them in the light most favorable to the nonmoving party. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010).

A fraud upon the court occurs "when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley,* 242 Mich App 100, 101; 617 NW2d 718 (2000). "[F]raud on the court cannot be committed in an adversary proceeding with respect to facts not known by the court, but known by both parties." *Id*. at 102. Where a party alleges that a fraud has been committed on the court, "courts understandably look

with skepticism upon a dissatisfied party's claim of fraud and insist on strict factual proof." *Yee v Shiawassee Co Bd of Com'rs*, 251 Mich App 379, 405; 651 NW2d 756 (2002).

The trial courts granted defendants' motions for summary disposition based, in part, on res judicata (Docket No's 336620 and 338455). As stated in *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004):

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. (internal citations omitted).

The 2013 case in which DTE sued plaintiff, and in which plaintiff asserts that the fraud occurred, was decided on the merits. That case and the current cases involved the same parties or their privies. The issue of whether DTE and its employees committed a fraud upon the court in the 2013 case could clearly have been resolved in the 2013 case. Plaintiff asserts that statements contained in the 2013 complaint were false, as was Hammond's affidavit submitted in that case and other various assertions made by DTE. Resolution of whether those statements, assertions and the affidavit were false would best be resolved in the first action by the trial court reviewing the same. Thus, plaintiff's claim of fraud upon the court in the 2013 action is barred by res judicata.

Witness immunity, another reason the trial courts relied upon in granting summary disposition in defendants' favor, also supports the trial courts' rulings of dismissal of plaintiff's claims of fraud. "Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried." *Maiden v Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999). Falsity on the part of the witness does not abrogate the privilege and the privilege is to be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. *Id*. As stated by Our Supreme Court:

> The confluence of principles related to res judicata, collateral estoppel, and proximate cause serve to illustrate the logical underpinnings of the general rule giving witnesses immunity from civil suit. . . . If testimony in one suit, accepted by the court but disputed by the losing litigant, can give rise to a second suit, what would prevent a third suit arising from the unsatisfactory outcome of the second? Or a fourth arising from the third?
>
> Witness immunity is also grounded in the need of the judicial system for testimony from witnesses who, taking their oath, are free of concern that they themselves will be targeted by the loser for further litigation. Absent perjury of a character requiring action by the prosecuting attorney, the testimony of a witness is to be weighed by the factfinder in the matter at bar, not by a subsequent jury

summoned to determine whether the first lawsuit was tainted by fraud. [*Daoud v De Leau*, 455 Mich 181, 202–03; 565 NW2d 639 (1997)]

Thus, statements made by DTE or its employees or privies in the 2013 case were subject to the privilege of witness immunity. To the extent that plaintiff felt such statements were false and perpetrated a fraud upon the court, he was required to raise those issues before the court hearing the matter, not in a separate action. This holds true for claims relating to any fraud allegedly perpetrated on the trial court in the 2013 action by DTE, Hammond, or Prince.

Plaintiff next asserts that because Judge Kumar recused herself from plaintiff's case against DTE, disqualification of Judges Matthews and Warren was required under stare decisis and that their disqualification was also required due to the extreme bias, prejudice and bigotry Judges Matthews and Warren had against plaintiff (all dockets). In reviewing a motion to disqualify a judge, we review the trial court's findings of fact for an abuse of discretion and review the applicability of the facts to relevant law de novo. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001).

First, plaintiff's reliance on the principle of stare decisis as authority for Judges Matthews and Warren's disqualifications is misplaced. "Under the longstanding doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 366; 792 NW2d 686 (2010). Stare decisis, is defined in Black's Law Dictionary (7th ed.) as "[t]he doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation." Judge Kumar's decision to recuse herself in a case is not a principle of law that was decided. It was a factual determination she made for herself. Her decision set no "precedent" in that case or other cases for other judges to recuse or disqualify themselves.

As to whether Judges Matthews and Warren should have otherwise disqualified themselves from plaintiff's cases, MCR 2.003(C)(1) provides, in relevant part:

(1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

(c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

This Court has previously stated that repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. *Armstrong*, 248 Mich App at 597, quoting *Band v Livonia Associates*, 176 Mich App 95, 118; 439 NW2d 285 (1989). In addition, "it can never be the

case, in our judgment, that a judge can be required to disqualify himself on the basis of hostile conduct directed toward him by the *attorney* or *litigant*, rather than on the basis of the *judge's* own conduct. To require recusal in these circumstances would be to incentivize hostile conduct by an attorney or litigant desirous of excluding disfavored judges from participation in their cases." *Grace v Leitman*, 474 Mich 1081, 1081-82; 711 NW2d 38 (2006).

Plaintiff contends that because he filed a lawsuit against Judge Matthews in federal court, there was an "obvious presence of bias and prejudice" and she should have disqualified herself. However, he has identified no specific conduct, aside from ruling against him that establishes any bias or prejudice on the part of Judge Matthews. More importantly, were a party to obtain disqualification on the bare fact that he has sued the judge, it would encourage judge shopping by the filing of frivolous lawsuits. "Indeed, if anyone can force a judge's disqualification merely by suing that judge, then any litigant would have an easy method of judge-shopping, eliminating disfavored judges until the desired judge has been obtained. The destructive effect of such a rule is too obvious to require further elaboration." *Grievance Adm'r v Fieger*, 476 Mich 231, 274; 719 NW2d 123 (2006).

With respect to Judge Warren, plaintiff asserts that he has exhibited bias, prejudice and bigotry by requiring plaintiff to post a $2500 cash bond to amend his complaint in the Prince case (Docket No. 337483) and not allowing plaintiff to amend his complaint against Hammond (Docket No. 336489). Neither of these cited reasons establishes any bias, prejudice or bigotry by Judge Warren.

Plaintiff filed his complaint against Prince in September 2016, an amended complaint in October 2016, a third amended complaint (with the court's permission) in December 2016, and then moved to file a fourth amended complaint in December 2016. He then moved to withdraw his request to file a fourth amended complaint in January 2017. In February 2017, plaintiff again filed a motion for leave to file a fourth amended complaint. Since the filing of the initial complaint, defendant had only filed a motion for summary disposition in early November 2016 and it appears that little or no discovery had taken place In a February 27, 2017 order, Judge Warren granted plaintiff's motion, subject to the posting of a $2500 cash bond. Judge Warren noted case law providing that the assertion of groundless allegations or a tenuous legal theory may be sufficient reason for ordering the posting of a security bond. Judge Warren further noted, "the Plaintiff has filed several related lawsuits, all of which have been dismissed. His current pleadings and motions provide little confidence that his positions are better grounded or more reasoned in this case. The Plaintiff's seriatim amendments clearly result in needless incurring of additional costs and fees by the Defendant. Nothing before the Court reveals why the claims and allegations set forth in the Fourth Amended Complaint could not have been presented in the original (or perhaps the First, or Second, or Third) Amended Complaint. Furthermore, for the reasons articulated in the Response, the motion is dilatory and likely futile." Plaintiff did not file the fourth amended complaint.

MCR 2.209 provides for security bonds, in relevant part, as follows:

(A) Motion.

On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion.

A court may require a security bond when there is a substantial reason for such a requirement. *In re Sur Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). "A 'substantial reason' for requiring security may exist where there is a 'tenuous legal theory of liability,' or where there is good reason to believe that a party's allegations are 'groundless and unwarranted. *Id*. at 331-332. Given all of the prior amended complaints in this case and Judge Warren's experience with plaintiff in another substantially similar case, the requirement of a bond was warranted. The bond requirement in no way establishes bias, prejudice or bigotry on the part of Judge Warren.

Plaintiff asserts that Judge Warren's bias and prejudice was also demonstrated by his refusal to allow plaintiff to file a fifth amended complaint. However, there is nothing in the record to establish that plaintiff's motion to file a fifth amended complaint was addressed by Judge Warren or that such was necessary, given its grant of summary disposition in Hammond's favor.

It plainly appears to this Court that plaintiff's allegations of bias, prejudice and bigotry are nothing more than complaints against the trial court's rulings against him, as his complaints of the same (and motions to disqualify) appear in nearly every case where a decision against him has been issued. Rather than review his claims and pleadings to ensure that they have a basis, plaintiff engages in lengthy, hate-filled diatribes against each judge daring to not rule in his favor and thereafter claims even *more* bias and prejudice on the judges' parts based on his statements and claims made against them. As previously noted, plaintiff has referred to Judge Kumar in the most derogatory terms this Court has ever seen and caused Judge Chabot to recuse herself due to her personal fear of plaintiff. Plaintiff's apparent forum-shopping undermines the essential integrity of the judicial system and the blatant manipulation and exploitation of our judicial system by a plaintiff asking redress for totally baseless non-grievances will not be tolerated.

Plaintiff next contends that his rights to equality and to speak for and represent himself were grossly violated by Judge Matthews and Judge Warren. It appears that plaintiff may be raising a due process argument. If that is the case, this issue presents a question of constitutional law that we review de novo. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

As stated in *Bonner v City of Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014):

While the touchstone of due process, generally, "is protection of the individual against arbitrary action of government," the substantive component protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for

the protection of life, liberty, and property interests.

"The Due Process Clause requires an unbiased and impartial decision maker. Thus, where the requirement of showing actual bias or prejudice under MCR 2.003(B)(1) has not been met, or where the court rule is otherwise inapplicable, parties have pursued disqualification on the basis of the due process impartiality requirement." *Cain v Michigan Dept of Corr*, 451 Mich 470, 497; 548 NW2d 210 (1996). In *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975), our Supreme Court stated:

> The United States Supreme Court has disqualified judges and decisionmakers without a showing of actual bias in situations where "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Among the situations identified by the Court as presenting that risk are where the judge or decisionmaker
>
> (1) has a pecuniary interest in the outcome;
>
> (2) "has been the target of personal abuse or criticism from the party before him";
>
> (3) is "enmeshed in [other] matters involving petitioner ..."; or
>
> (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. [(citations omitted)]

Judicial disqualification pursuant to the Due Process Clause is only constitutionally required in the most extreme cases. *Cain*, 451 Mich at 498.

Plaintiff asserts that Judge Matthews paid more attention to defense counsel's arguments than his and allowed counsel to "hijack" arguments (Docket No. 336620). At an August 3, 2016 hearing, plaintiff spoke and was clearly heard by Judge Matthews. When plaintiff attempted to inform Judge Matthews about other cases and issues, she simply guided him back to the issue at hand. During a September 28, 2106 hearing Judge Matthews was extremely polite and helpful to plaintiff. Plaintiff spoke at length and Judge Matthews listened attentively. Plaintiff has not established that Judge Matthews responded to him in any way that was unprofessional. Plaintiff's complaint concerning Judge Warren relates to Judge Warren's alleged refusal to allow plaintiff to amend his complaint, which was previously addressed.

Finally, under a separate section entitled "Conclusion and Relief Requested" plaintiff asked that every order against him be voided, including those ordering sanctions against him because his claims in the trial court were not frivolous. While that is the extent of any "argument" challenging the award of sanctions against him, this Court nevertheless addresses this argument.

"A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). We review the amount of sanctions imposed by a trial court is reviewed for an abuse of discretion. *BJ's & Sons Const Co, Inc v Van Sickle*, 266 Mich App 400, 410; 700 NW2d 432 (2005).

-9-

Reviewing plaintiff's complaints and amended complaints in these matters, the trial courts could properly find that they were devoid of arguable legal merit. Plaintiff lost no property or rights by virtue of the 2013 case. The only thing that happened to plaintiff is that the trees on his property got trimmed around power lines and DTE maintained the ability to trim the trees, ensuring the safety of the neighborhood and plaintiff. Plaintiff appealed that decision, and this Court affirmed the trial court. He then applied for leave to appeal with the Supreme Court, which denied his application, *DTE v Constant*, 498 Mich App 883; 869 NW2d 580 (2015), and thereafter filed a petition for writ of certiorari with the United State Supreme Court, which was also denied. *Constant v DTE*, 136 S Ct 1664; 194 L Ed 2d 776 (2016). Rather than accept that the highest Court of our nation found no merit to his claims that DTE should have to pay him for an easement over his property to maintain the power lines or should not have trimmed the trees on his property around the power lines, plaintiff began a prolonged course of litigation in state and federal courts against anyone involved in the 2013 case, including the trial judge. All of these cases have resulted in dismissals and summary disposition rulings in favor of the defendants.

Plaintiff's filings exhibit a belief that DTE, its employees and privies, the trial court judge, the panel of judges who affirmed the lower court decision in the 2013 case, and a host of others have gathered together to conspire against him and deprive him of the just compensation allegedly due to him for the tree branches trimmed from his property and the easement over his property to trim said trees. His pleadings in the trial court cases are often disjointed and irate and sometimes border incoherent. In a response to defendant Hammond's motion for summary disposition, for example (Docket No. 336489), plaintiff stated:

> Defendant Hammond did not seek the consent of the Gods, acknowledged in the opening statements of the Michigan Constitution as the Authority for the State's existence, for their consent to mess with me in trying to take the little that this same Michigan God had granted to me in life, which includes property easements rights over my property, my freedom on my property, my Good name, image, and reputation, and the base of my approvability by prospective employers and creditors, by means of fraud, deception, false pretense, fraudulent misrepresentations, and malicious prosecution in a Michigan court of Justice, of all sacred places. . . . Hammond implicitly separated me, from other living things that share and help complete my existence, the trees on my property. And I am angry and bitter to the core more than the German Fuhrer held over 80+ years ago, but I am not violent like the Fuhrer.

Defendant also sent a letter to defense counsel on June 6, 2016, stating that he was "strongly convinced that you are left with no options than to hire a contract killer to kill me, and silence the greatest evidence against you all, and your infidelity in this matter, me" and that he had notified family in Africa and America of the situation "so they will know who to point law enforcement to, to seek justice against, if anything happens to me mortally, in the course of these proceedings." Defendants have been forced to defend against actions against them that have no basis in law and are unsupported by evidence and during those proceedings, have further been

forced to respond to a litany of meritless motions and to attempt to decipher the often off-topic and peculiar pleadings and correspondences from plaintiff.

Despite the fact that plaintiff has already consumed extensive judicial time and resources (requesting and receiving fee waivers in almost all cases) on his meritless and frivolous claims, this Court has patiently and carefully scrutinized every aspect of his claims on appeal to determine whether there is a scintilla of merit in any of them. Finding none, we affirm the trial court rulings in all cases. We further find that, given the substantial history in these cases and all related cases, plaintiff's appeals are vexatious in nature, taken without any reasonable basis for belief that there was a meritorious issue to be determined on appeal. We therefore remand each of these cases to the trial courts for a determination of actual damages and expenses incurred, including reasonable attorney fees, to be awarded to each defendant as a result of the vexatious appeals.[2]

Affirmed. We remand each case to its respective trial court pursuant to MCR 7.216(C)(2) for a determination of actual damages. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Jane M. Beckering

---

[2] This Court has no doubt that it, too, will be accused of bias, prejudice, and bigotry against plaintiff as have most, if not all, of the judges who have rendered opinions in any case dealing with plaintiff.